**THIS IS NOT A SOLICITATION FOR ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED.**

## UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION
#### www.flsb.uscourts.gov

In re:                                                    Chapter 11

GREEN ROADS, INC.,[1]

                                                          Case No. 23-11738-SMG

        Debtor.

_____/

## AMENDED DISCLOSURE STATEMENT FOR THE CHAPTER 11
## PLAN OF LIQUIDATION PROPOSED BY GREEN ROADS, INC.

Dated: May 6, 2024

/s/ James R. Irving
James R. Irving (admitted pro hac vice)
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail: james.irving@dentons.com

-and-

Jonathan Kaskel (FBN 52718)
DENTONS US LLP
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 537-0009
E-mail: jonathan.kaskel@dentons.com

-and-

Andrew C. Helman (admitted pro hac vice)
DENTONS BINGHAM GREENEBAUM LLP
254 Commercial Street, Suite 245
Merrill's Wharf
Portland, Maine 04101
E-mail: andrew.helman@dentons.com

*Counsel to Green Roads, Inc.*

---

[1]    The last four digits of the Debtor's federal tax identification number is 0208.

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS SET IN THE DISCLOSURE STATEMENT ORDER.  TO BE COUNTED, DENTONS BINGHAM GREENEBAUM LLP, ATTN: JAMES R. IRVING, 3500 PNC TOWER, 101 SOUTH FIFTH STREET, LOUISVILLE, KY, 40202 MUST ACTUALLY RECEIVE YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN AND ANY EXHIBITS THERETO IS SPECULATIVE, AND PERSONS SHOULD NOT RELY ON SUCH DOCUMENTS IN MAKING INVESTMENT DECISIONS WITH RESPECT TO (A) THE DEBTOR OR (B) ANY OTHER ENTITIES THAT MAY BE AFFECTED BY THE CHAPTER 11 CASE.**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT—INCLUDING, BUT NOT LIMITED TO, THE INFORMATION REGARDING THE DEBTOR'S HISTORY, BUSINESS, AND OPERATIONS, THE DEBTOR'S FINANCIAL INFORMATION, AND THE DEBTOR'S LIQUIDATION ANALYSIS—IS INCLUDED SOLELY FOR THE LIMITED PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN. YOU SHOULD NOT RELY UPON OR USE THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(B) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED, THEREFORE, ANY ANALYSES, ESTIMATES OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTOR'S POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT,

LIABILITY, STIPULATION OR WAIVER. RATHER, HOLDERS OF CLAIMS AND EQUITY INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE DEBTOR MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS. THE PLAN RESERVES THE RIGHT FOR THE DEBTOR TO BRING CAUSES OF ACTION (DEFINED IN THE PLAN) AGAINST ANY ENTITY OR PARTY IN INTEREST EXCEPT THOSE SPECIFICALLY RELEASED.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.

ALL REPRESENTATIONS CONTAINED HEREIN ARE THOSE OF THE DEBTOR EXCEPT WHERE OTHERWISE STATED. NO OTHER PERSON IS AUTHORIZED BY THE DEBTOR TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN AND THE EXHIBITS ATTACHED THERETO, INCORPORATED BY REFERENCE OR REFERRED TO HEREIN. IF ANY SUCH INFORMATION IS GIVEN OR REPRESENTATIONS ARE MADE, SUCH INFORMATION OR REPRESENTATIONS MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR. FURTHER, ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY PERSON. HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND ITS OWN ANALYSIS OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST IN A VOTING CLASS SHOULD CONSIDER

CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

## RECOMMENDATION BY THE DEBTOR

**The Debtor recommends that all creditors and interest holders whose votes are being solicited submit ballots to accept the Plan.  Only the votes of holders of Class 1-A (General Unsecured Claims) Claims and Class 1-B (Founders' Claims) Claims are being solicited to vote on the Plan.**

# TABLE OF CONTENTS

**Page**

**ARTICLE I SUMMARY** .................................................................................................. **1**

    **A.**    **Rules of Interpretation** ............................................................................ **1**

    **B.**    **Procedural History** ................................................................................... **1**

    **C.**    **The Purpose of the Plan** ........................................................................... **3**

    **D.**    **Treatment of Claims and Equity Interests** ........................................... **3**

    **E.**    **Entities Entitled to Vote on the Plan** ..................................................... **5**

    **F.**    **Solicitation Process** .................................................................................. **6**

    **G.**    **Voting Procedures** .................................................................................... **6**

    **H.**    **Confirmation Hearing** ............................................................................. **7**

**ARTICLE II CHAPTER 11 CASE** ................................................................................. **7**

    **A.**    **The Debtor's Business & Bankruptcy Filing** ......................................... **7**

    **B.**    **Events Leading to the Chapter 11 Case** .................................................. **7**

    **C.**    **Debtor-in-Possession Financing and Use of Cash Collateral** ............... **8**

    **D.**    **The Sale** ..................................................................................................... **8**

    **E.**    **Assets Projected to be Administered under Chapter 11 Plan** ............... **9**

    **F.**    **Claims Objections** .................................................................................... **9**

**ARTICLE III SUMMARY OF THE PLAN** ................................................................. **9**

    **A.**    **Summary** .................................................................................................... **9**

    **B.**    **Administrative and Priority Claims** ..................................................... **10**

    **C.**    **Classification and Treatment of Claims and Equity Interests** ........... **12**

    **D.**    **Nonconsensual Confirmation** ................................................................ **14**

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ....................... **14**

    **A.**    **Vesting of Assets** ..................................................................................... **14**

23245129.v4

# TABLE OF CONTENTS
(continued)

Page

B.      The Liquidating Trust ................................................................ 14

C.      Responsible Person to Effectuate Distributions ............................ 15

D.      Corporate Authority ................................................................. 15

E.      Retention of Professionals ......................................................... 16

F.      Compensation of the Responsible Person ..................................... 16

G.      Costs and Expenses of the Responsible Person .............................. 16

H.      Liability .................................................................................. 16

I.      Liquidation of the Debtor .......................................................... 17

J.      Books and Records ................................................................... 17

K.      Operations of the Debtor Between the Confirmation Date and the
        Effective Date ......................................................................... 17

L.      Term of Injunctions or Stays ..................................................... 18

ARTICLE V PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS ............... 18

A.      Voting of Claims ...................................................................... 18

B.      Distribution Dates ................................................................... 18

C.      Disbursing Agent ..................................................................... 18

D.      Record Date for Distributions .................................................... 19

E.      Delivery of Distributions ........................................................... 19

F.      Undeliverable and Unclaimed Distributions .................................. 19

G.      Manner of Cash Payments Under the Plan .................................... 19

H.      Compliance with Tax Requirements ............................................ 20

I.      No Payments of Fractional Dollars .............................................. 20

J.      Interest on Claims .................................................................... 20

K.      No Distribution in Excess of Allowed Amount of Claim .................. 20

# TABLE OF CONTENTS
(continued)

Page

    **L.**      **Setoff and Recoupment**................................................................. **21**

    **M.**     **Closing of the Chapter 11 Case** ................................................... **21**

    **N.**      *De Minimis* **Distributions; Charitable Donation** ............................. **21**

    **O.**      **United States Trustee Fees** .......................................................... **21**

    **P.**      **No Distributions on Late-Filed Claims** ...................................... **21**

**ARTICLE VI DISPUTED CLAIMS**........................................................ **22**

    **A.**      **No Distribution Pending Allowance** ............................................ **22**

    **B.**      **Resolution of Disputed Claims; Reserves for Disputed Claims**..................... **22**

    **C.**      **Objection Deadline**.................................................................... **22**

    **D.**      **Estimation of Claims**.................................................................. **23**

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................................................ **23**

    **A.**      **Rejection of Executory Contracts and Unexpired Leases**............................. **23**

    **B.**      **Claims Based on Rejection of Executory Contracts or Unexpired Leases** ................................................................... **23**

**ARTICLE VIII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ................. **24**

    **A.**      **Conditions Precedent**.................................................................. **24**

    **B.**      **Waiver**..................................................................................... **24**

**ARTICLE IX INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS**........................................................... **25**

    **A.**      **Compromise and Settlement**........................................................ **25**

    **B.**      **Title to Assets; Discharge of Liability** ........................................ **25**

    **C.**      **Binding Effect**.......................................................................... **25**

    **D.**      **Discharge of Claims**.................................................................. **25**

    **E.**      **Discharge of the Debtor**............................................................. **26**

23245129.v4

# TABLE OF CONTENTS
(continued)

                                                                                    Page

F.   Exculpation ....................................................................... 26

G.   Limitations on Exculpation ................................................ 26

H.   Preservation of Causes of Action ...................................... 27

I.   Injunction ......................................................................... 29

J.   Releases of Liens .............................................................. 30

**ARTICLE X RETENTION OF JURISDICTION** ............................... 30

A.   Scope of Retained Jurisdiction ......................................... 30

B.   Exclusive Jurisdiction ...................................................... 32

**ARTICLE XI MISCELLANEOUS PROVISIONS** ............................... 32

A.   Modification of Plan ......................................................... 32

B.   Revocation of Plan ............................................................ 32

C.   Binding Effect .................................................................. 32

D.   Successors and Assigns ..................................................... 33

E.   Governing Law ................................................................. 33

F.   Reservation of Rights ....................................................... 33

G.   Article 1146 Exemption ..................................................... 33

H.   Section 1125(e) Good Faith Compliance ............................ 33

I.   Further Assurances ........................................................... 33

J.   Service of Documents ....................................................... 34

K.   Filing of Additional Documents ........................................ 34

L.   No Stay of Confirmation Order ......................................... 34

M.   Survival of Carve-Outs ..................................................... 34

N.   Exemption ........................................................................ 34

# TABLE OF CONTENTS
(continued)

**Page**

O.  Substitution of the Liquidating Trust for the Debtor .......................... 35

P.  Survival of Previous Orders from the Bankruptcy Court ............................. 35

**ARTICLE XII SOLICITATION AND VOTING PROCEDURES** ....................................... 35

A.  Solicitation Package .......................................................... 35

B.  Voting Instructions and General Tabulation Procedures ............................. 36

**ARTICLE XIII CONFIRMATION PROCEDURES** .......................................... 39

A.  Confirmation Hearing ......................................................... 39

B.  Statutory Requirements for Confirmation of the Plan ................................ 39

C.  Contact for More Information ................................................. 42

**ARTICLE XIV PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ............................... 42

A.  Certain Bankruptcy Law Considerations ........................................ 42

B.  Risk Factors That May Affect Distributions Under the Plan ....................... 45

C.  Disclosure Statement Disclaimer ............................................ 45

D.  Liquidation Under Chapter 7 – Liquidation Analysis ................................ 46

E.  Certain U.S. Federal Income Tax Consequences ................................ 46

F.  Federal Income Tax Consequences to the Debtor ............................... 47

G.  Federal Income Tax Consequences to Holders of General Unsecured Claims .......................................................................... 47

H.  Federal Income Tax Treatment of Equity Interests ............................. 47

I.  Withholding and Reporting ................................................... 47

**ARTICLE XV GLOSSARY OF DEFINED TERMS** ................................................ 48

**ARTICLE XVI CONCLUSIONS AND RECOMMENDATION** ....................................... 55

23245129.v4

## **EXHIBITS**

| | |
|---|---|
| Exhibit A | The Plan |
| Exhibit B | Liquidation Analysis |
| Exhibit C | Subsequent Notice List |

# ARTICLE I

# SUMMARY[2]

Pursuant to section 1125 of the Bankruptcy Code, Green Roads, Inc., the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case submits this Disclosure Statement to holders of Claims and Equity Interests in connection with (a) the solicitation of votes to accept or reject the Plan and (b) the Confirmation Hearing.

The following summary is qualified in its entirety by the more detailed information and financial statements contained elsewhere in this Disclosure Statement.

## A.    Rules of Interpretation

For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## B.    Procedural History

On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor remains a debtor in possession pursuant to Sections 1107(a) and

---

[2]    Capitalized terms not otherwise defined herein are defined in the glossary contained in Article XV of this Disclosure Statement

1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case. Likewise, no official committee of unsecured creditors has been appointed in the Chapter 11 Case.

On the Petition Date, the Debtor filed the DIP Motion.  No parties objected to the relief sought in the DIP Motion, and as a result, on March 16, 2023, the Court entered the Interim DIP Order.  On April 4, 2023, the Court entered the Final DIP Order, granting the DIP Motion on a final basis.

On March 13, 2023, the Debtor filed a motion [Docket No. 35] to approve (i) bidding and sale procedures and (ii) the sale of substantially all of the Debtor's assets (the "Purchased Assets").

On April 3, 2023, the Court entered the order approving the bidding procedures for the Purchased Assets [Docket No. 62] (the "Bidding Procedures Order", and the procedures approved therein, the "Bidding Procedures").

After successfully completing the sale process for the Purchased Assets, the Debtor declared the winning bid for the sale and adjourned the auction as permitted by the Bidding Procedures Order and the Debtor filed a notice of the successful bid [Docket No. 85].

On May 18, 2023, the Bankruptcy Court entered an *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* [Docket No. 93] (the "Sale Order"), pursuant to which the Bankruptcy Court approved the sale of the Purchased Assets (the "Sale") to Global Widget, LLC ("Global Widget") pursuant to that certain *Purchase and Sale Agreement By and Among Global Widget, LLC and Green Roads, Inc.* [Docket No. 90-1] (the "APA").

The closing of the Sale was completed pursuant to the terms of the Sale Order and the APA on May 31, 2023.

Following the Closing of the Sale, the Debtor has worked to satisfy Claims, resolve tax issues, and otherwise maximize recovery for the holders of Claims.  Specifically:

- On July 20, 2023, the Debtor filed the *Debtor's Motion for Entry of an Order Transferring Subsidiary Funds to the Debtor and Dissolving Subsidiaries* [Docket No. 106].  On August 14, 2023, the Bankruptcy Court granted this motion [Docket No. 118].  Under the terms of this relief, the Debtor consolidated funds held in bank accounts with the names of non-debtor affiliates into a single debtor-in-possession financing account.

- On August 7, 2023, the Debtor filed the *Debtor's Motion for Entry of an Order Under 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Debtor to Repay Existing Secured Claim* [Docket No. 114].  On September 8, 2023, the Bankruptcy Court granted this motion [Docket No. 127].  Under the terms of this relief, the Debtor repaid the interest-bearing, secured under the terms of the Final DIP Order.

- On November 28, 2023, the Debtor filed the *Debtor's Application for Employment of Soneet R. Kapila and KapilaMukamal as Financial Advisors Effective as of October 19, 2023* [Docket No. 151].  On December 14, 2023, the Bankruptcy Court

2

granted this application [Docket No. 162]. Under the terms of this relief, the Debtor engaged Mr. Kapila to complete tax returns and serve as an advisor to the Debtor.

- The Debtor's team has been in extensive negotiations with State taxing authorities which held significant alleged priority claims and alleged secured claims against the Debtor. Through these negotiations, which sometimes amounted to essentially audits of the Debtor's pre-petition sales and tax payments, the Debtor believes that it has successfully reduced the amount of priority and secured claims held by state taxing authorities from $256,348.52 to just 18,703.84.

- The Debtor's team has also been considering a sale of its employee retention tax credits, and has sought to negotiate a resolution of claims that the Debtor may have against SNDL related to the satisfaction of tax claims.

On April 3, 2024, the Bankruptcy Court entered a show cause order [Docket No. 173] directing the Debtor to respond to why the Chapter 11 Case should not be dismissed or converted because the Debtor has not yet confirmed a plan and has frequently been late in filing monthly operating reports. Similarly, the U.S. Trustee filed a motion to this same effect [Docket No. 179]. A hearing was held on this issue on May 1, 2024, and was continued to July 10, 2024 so that the Court could also consider the adequacy of information in this Disclosure Statement. The Debtor strongly disagrees that the Chapter 11 Case should be dismissed or converted. All monthly operating reports are current as of this date, and the Debtor has actively taken steps in this Chapter 11 Case to maximize recovery.

The Debtor believes that the liquidation of the Debtor's remaining assets pursuant to a plan of liquidation under chapter 11 of the Bankruptcy Code, as opposed to chapter 7 of the Bankruptcy Code, would yield greater recovery to the Debtor's creditors.

## C.    The Purpose of the Plan

The Debtor filed the Plan with the Bankruptcy Court to facilitate the liquidation of the Debtor's Estate and the Distribution of the Assets to holders of Allowed Claims. A copy of the Plan is attached hereto as **Exhibit A** and is incorporated herein by reference.

The Debtor believes that the Plan provides the best recoveries possible for holders of Allowed Claims and strongly recommends that, of such holders that are entitled to vote, they vote to accept the Plan.

## D.    Treatment of Claims and Equity Interests

THE FOLLOWING CHART IS A SUMMARY OF THE CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS AND THE POTENTIAL DISTRIBUTIONS UNDER THE PLAN. THE AMOUNTS SET FORTH BELOW ARE ESTIMATES ONLY. REFERENCE SHOULD BE MADE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN FOR A COMPLETE DESCRIPTION OF THE CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS. THE RECOVERIES SET FORTH BELOW ARE PROJECTED RECOVERIES AND ARE, THEREFORE, SUBJECT TO CHANGE. THE ALLOWANCE OF CLAIMS AND

3

EQUITY INTERESTS MAY BE SUBJECT TO LITIGATION OR OTHER ADJUSTMENTS, AND ACTUAL ALLOWED AMOUNTS FOR CLAIMS AND EQUITY INTERESTS MAY DIFFER MATERIALLY FROM THESE ESTIMATED AMOUNTS.  INDEED, THE DEBTOR AND THE RESPONSIBLE PERSON INTEND TO OBJECT TO CERTAIN CLAIMS THAT THEY BELIEVE SHOULD NOT BE ALLOWED, OR WHICH ARE OVERSTATED OR MISCHARACTERIZED.

| Class/Type of Claim or Equity Interest | Plan Treatment of Class | Estimated Amount of Claims in Class | Projected Recovery Under Plan |
|---|---|---|---|
| **UNCLASSIFIED CLAIMS** | | | |
| Administrative Claims | Paid in full in Cash on the Effective Date or as soon as practicable thereafter, or otherwise waived in the context of accrued professional claims. | Undetermined | 100% |
| Priority Tax Claims | Paid in full in Cash on the Effective Date or as soon as practicable thereafter, consistent with the priority scheme established in section 507 of the Bankruptcy Code. | $18,073.84 (combined) | 100% |
| Other Priority Claims | Paid in full in Cash on the Effective Date or as soon as practicable thereafter, consistent with the priority scheme established in section 507 of the Bankruptcy Code. | | 100% |
| Alleged Secured Claims | The Debtor does not believe it has any allowed secured claims.  Nevertheless, to the extent Allowed Claims are found to be secured, they will receive on account of such claim deferred Cash payments totaling at least the allowed amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estate's interest in such property. | $0.00 | N/A |

4

| Class/Type of Claim or Equity Interest | Plan Treatment of Class | Estimated Amount of Claims in Class | Projected Recovery Under Plan |
|---|---|---|---|
| **CLASSIFIED CLAIMS** | | | |
| General Unsecured Claims (Class 1-A) | General Unsecured Claims will receive a Pro Rata Distribution of the Assets remaining in the Liquidating Trust after all Administrative and Priority Claims have been satisfied, which recovery shall be *pari passu* with the recovery for the Founders' Claims. | $6,489,554.45 (in aggregate, though subject to reduction via claims objections) | 23.1% |
| Founders' Claims (Class 1-B) | Founders' Claims will receive a Pro Rata Distribution of the Assets remaining in the Liquidating Trust after all Administrative and Priority Claims have been satisfied, which recovery shall be *pari passu* with the recovery for the General Unsecured Claims | | |
| Equity Interests (Class 2) | All Equity Interests in the Debtor shall be cancelled | N/A | 0% |

## E.    Entities Entitled to Vote on the Plan

The Plan divides Claims versus Interests in the Debtor into Classes and provides separate treatment for each Class.

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Other Priority Claims will not be classified for the purposes of voting or receiving Distributions under the Plan.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1-A | General Unsecured Claims | Impaired | Entitled to Vote |
| 1-B | Founders' Claims | Impaired | Entitled to Vote |
| 2 | Equity Interests | Impaired | Deemed to Reject |

The Debtor **IS** soliciting votes to accept or reject the Plan from holders of Classes 1-A and 1-B because such holders are Impaired under the Plan and are projected to receive Distributions under the Plan.  Accordingly, holders of claims in Classes 1-A and 1-B have the right to vote to accept or reject the Plan.

5

The Debtor **IS NOT** seeking votes from the holders of claims in Class 2 because such holders will receive no Distribution under the Plan. Therefore, the holders of the claims in Class 2 are deemed to have rejected the Plan and will not be entitled to vote to accept or reject the Plan.

For a detailed description of the Classes of Claims and Equity Interests, as well as their respective treatment under the Plan see Article III of the Disclosure Statement.

### F.    Solicitation Process

The following documents and materials will constitute the solicitation package:

   i.    Plan;
   ii.   Disclosure Statement;
   iii.  Disclosure Statement Order;
   iv.   Confirmation Hearing Notice;
   v.    Unimpaired/Impaired Non-Voting Notices (as applicable);
   vi.   Appropriate Ballot or Notice of Nonvoting Status; and
   vii.  Pre-addressed, postage pre-paid return envelope.

The Debtor intends to distribute the solicitation packages no fewer than 38 calendar days before the Voting Deadline. The Debtor submits that distribution of the solicitation packages at least 38 calendar days prior to the Voting Deadline will provide the requisite materials to holders of Claims entitled to vote on the Plan in compliance with Bankruptcy Rules 2002(b) and 3017(d).

The solicitation package will be distributed to holders of claims in Classes 1-A and 1-B as of the Voting Record Date and in accordance with the Solicitation Procedures. The Solicitation Procedures were approved in the Disclosure Statement Order. The solicitation package may also be obtained by contacting the Debtor's counsel (Dentons Bingham Greenebaum LLP, Attn: James R. Irving, 3500 PNC Tower, 101 South Fifth Street, Louisville, KY 40202 or james.irving@dentons.com).

### G.    Voting Procedures

**The Voting Record Date**. The Voting Record Date is the date on which holders of Claims that are entitled to vote to accept or reject the Plan will be determined. The Voting Record Date is the date that is fourteen days after entry of the Disclosure Statement Order

**The Voting Deadline is 11:59 p.m. (Prevailing Eastern Time) on the Voting Deadline**. To ensure that a vote is counted, holders of Claims that are entitled to vote on the Plan must: (i) complete the Ballot; (ii) indicate a decision either to accept or reject the Plan; and (iii) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope provided in the solicitation package or by delivery via first-class mail, overnight courier or personal delivery, so that all Ballots are **actually received** no later than the Voting Deadline, by the Voting Agent. ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM ENTITLED TO VOTE, BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, WILL NOT BE COUNTED.

EACH HOLDER OF A CLAIM ENTITLED TO VOTE MUST VOTE ALL OF ITS INTEREST WITHIN A PARTICULAR CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH INTEREST.

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE DEBTOR DETERMINES OTHERWISE.

Prior to deciding whether and how to vote on the Plan, each holder in a Voting Class should consider carefully all of the information in this Disclosure Statement, especially the risk factors described herein.

### H.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

**The Confirmation Hearing will commence on the date and time set forth in the Disclosure Statement order**, before the Honorable Scott M. Grossman, United States Bankruptcy Court for the Southern District of Florida, U.S. Courthouse, 299 East Broward Boulevard, Courtroom 308, Fort Lauderdale, FL 33301.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

### ARTICLE II

### CHAPTER 11 CASE

### A.    The Debtor's Business & Bankruptcy Filing

The Debtor is a Delaware business corporation that had its principal office in Deerfield Beach, Florida.  As of the Petition Date, the Debtor had over 65 employees and had ongoing manufacturing operations in Florida.  The Debtor's products were sold in thousands of retail locations and online at greenroads.com with more than 30,000 five-star product reviews before the commencement of the Chapter 11 Case.  In the fiscal year 2022, the Debtor's annual revenue on a cash basis was $15,814,263.00.

### B.    Events Leading to the Chapter 11 Case

The Debtor or predecessor entities were formed in 2013 by Laura Fuentes and Arby Barroso.  By 2021, the Debtor was the largest privately-owned CBD company in the United States.

On or about June 17, 2021, The Valens Co. ("Valens"), a Canadian company, purchased the Debtor.  Valens, in turn, is a subsidiary of SNDL, Inc. ("SNDL"), a Canadian company and the ultimate, indirect parent of the Debtor.  Valens acquired the Debtor in a transaction with an up-front value of $40 million, including $25.4 million in common shares of Valens and up to $14.6 million in cash, plus up to an additional $20 million in earnout payments if certain goals were met following the closing of the transaction.  However, the Debtor's financial performance did not live

up to what was expected at the time of the transaction with Valens. The Debtor experiences operating losses on an annual basis, and Valens or SNDL have had to fund certain obligations of the Debtor to maintain business operations, including, most recently, funding payroll shortly before the Petition Date.

The Debtor's losses are driven by two factors. The first is increasing competition in the CBD industry. The second is supply chain and other stressors due to Covid-19, including that many small retailers closed down, thereby limiting the Debtor's distribution network. By implementing operational changes at or near the Petition Date, the Debtor was able to rectify some of the foregoing issues. However, even with such changes, the Debtor's income statement does not support its balance sheet, and Valens and SNDL are unwilling to continue to fund the Debtor's operations without a structured exit from the transaction. Consequently, the Debtor has developed and is seeking to implement a chapter 11 exit strategy as embodied in the Plan.

### C.    Debtor-in-Possession Financing and Use of Cash Collateral

On the Petition Date, the Debtor filed a number of motions including an *Emergency Motion for the Debtor for Entry of an Order on an Interim and Then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief* [Docket No. 13] (the "DIP Motion"), requesting, among other relief, authority to enter into a $1.75 million senior secured debtor-in-possession financing facility (the "DIP Financing Agreement") by and among the Debtor and Liquor Stores Limited Partnership, by its general partner, Liquor Stores GP, Inc., a Canadian limited partnership ("LSLP") or an existing or newly formed entity under the control of LSLP. The proposed DIP Financing Agreement was to be secured by a first lien on all of the Debtor's assets, subject to a carve-out for U.S. Trustee and professional fees.

No parties objected to the relief sought in the DIP Motion, and as a result, on March 16, 2023, the Court entered the *Interim Order Granting Emergency Motion of the Debtor for Entry of an Order on an Interim and Then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief* [Docket No. 42] (the "Interim DIP Order"), granting the DIP Motion on an interim basis. On April 4, 2023, the Court entered the *Final Order Granting Emergency Motion of the Debtor for Entry of an Order on an Interim and Then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief* [Docket No. 64] (the "Final DIP Order"), granting the DIP Motion on a final basis.

### D.    The Sale

The Debtor conducted sales and bidding processes with respect to the Purchased Assets (pursuant to the Bidding Procedures). Together, the Purchased Assets represented substantially all of the Debtor's assets. The successful bidder pursuant to the Bidding Procedures was Global Widget, and the Court approved the Sale by entry of the Sale Order on May 18, 2023. The Sale closed on May 31, 2023. Pursuant to the Sale, Global Widget paid $3,100,000.00 to the Estate.

Additionally, the terms of the Sale provided that Global Widget assumed responsibility for all cure amounts for any contract or lease assumptions.

### E.    Assets Projected to be Administered under Chapter 11 Plan

The Estate's assets to be administered by the Liquidating Trust include: (i) all of the Debtor's Cash as of the Effective Date; (ii) all Causes of Action not transferred, waived or settled during the pendency of the Chapter 11 Case; (iii) all rights for payments or proceeds owed by Global Widget under the terms of the Sale Order; and (iv) all other assets of the Debtor's Estate as of the Effective Date.

### F.    Claims Objections

The Debtor, and subsequently the Responsible Person, intends to file objections to Claims which they believe should not be Allowed or which are overstated or mischaracterized.  To be clear, the Debtor also takes the position that there are currently no Claims against the Debtor or the Estate which are properly secured.

## ARTICLE III

## SUMMARY OF THE PLAN

### A.    Summary

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims, Priority Tax Claims and Other Priority Claims.

The following table classifies Claims against and Equity Interests in the Debtor for all purposes, including voting confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated under the Plan as a distinct Class for voting and distribution purposes.

Summary of Classification and Treatment of Classified Claims and Equity Interests.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1-A | General Unsecured Claims | Impaired | Entitled to Vote |
| 1-B | Founders' Claims | Impaired | Entitled to Vote |
| 2 | Equity Interests | Impaired | Deemed to Reject |

9

**B.      Administrative and Priority Claims**

1.      **Administrative Claims Bar Date**

By the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 20], the Bankruptcy Court established May 15, 2023 as the deadline for all creditors to file a proof of claim except governmental units, though such deadline does not specifically pertain to Administrative Claims.

Further, thirty days after the Effective Date shall be the Administrative Bar Date, the deadline for parties to submit a request for payment of *any* Administrative Claim, including, but not limited to Administrative Expense Claims incurred under section 503(b)(9) of the Bankruptcy Code.

Additionally, thirty days after the Effective Date shall be the Subsequent Bar Date, the deadline for any parties who have been added to the Subsequent Notice List to submit a request for payment of any Claim to the Bankruptcy Court.  The Debtor believes that it has always provided adequate and appropriate notice in the Chapter 11 Case.  However, Tamera Industries, Inc. alleged in a motion that it did not receive proper notice of the Claims Bar Date [Docket Nos. 121 and 121].  The Debtor contests this: the Debtor's books and records did not reflect Tamera Industries, Inc. as a creditor; Tamera Industries, Inc.'s only appearance in the Debtor's Schedules was as the recipient of a payment during the 90 days before the Petition Date; and Tamera Industries, Inc.'s purported agreement with the Debtor was actually with Green Roads of Florida, LLC – a predecessor entity.  Nevertheless, out of an abundance of caution, the Debtor has gone back to provide further notice of the Chapter 11 Case and to provide a Subsequent Bar Date to other parties listed in the Schedules to ensure that they receive notice.  The great majority of parties on the Subsequent Notice List are the Debtor's former employees whose claims were previously satisfied by the Debtor's employee wage motion.

Except as otherwise provided herein, on the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court and serve on the Responsible Person, any request for payment of an unpaid Administrative Claim incurred before the Administrative Claim Bar Date.  Requests for payment of an Administrative Claim must include, at a minimum: (i) the name of the holder of the Administrative Claim; (ii) the amount of the asserted Administrative Claim; (iii) the basis of the Administrative Claim; (iv) when the Administrative Claim was incurred; and (v) all supporting documentation for the Administrative Claim.

Any request for payment of an Administrative Claim will be timely Filed only if it is filed with the Bankruptcy Court by the Administrative Claim Bar Date.

Notwithstanding anything herein, the Debtor's Professionals shall not be required to file a request for payment of Accrued Professional Compensation on or before the Administrative Claims Bar Date.  Such Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules, Confirmation Order and Plan as set forth in Article II Section B of this Plan.

2.    **Accrued Professional Compensation**

The deadline for submission by Professionals for Bankruptcy Court approval of Accrued Professional Compensation shall be the 30th day following the Effective Date.

3.    **Priority Claims**

Priority Tax Claims are not classified under the Plan.  Except to the extent that the holder of an Allowed Priority Tax Claim agrees otherwise, each holder of an Allowed Priority Tax Claim shall ultimately receive in respect of such Allowed Claim the full amount of the Allowed Priority Tax Claim in Cash.  The Responsible Person will direct the Liquidating Trust to make distributions to the holders of Allowed Priority Tax Claims on the later of: (a) the Effective Date; or (b) the date on which such Priority Tax Claim becomes an Allowed Claim.  To be clear, the order of payment of all Priority Tax Claims and Other Priority Claims will be consistent with the priority scheme established in section 507 of the Bankruptcy Code.  In any event, the Liquidating Trust shall make distributions to satisfy the Allowed Priority Tax Claims not later than five (5) years after the Petition Date in compliance with section 1129(a)(9)(C).  Unless otherwise provided by an order of the Bankruptcy Court, no fees, interest or penalties of any kind shall be paid to the holders of Allowed Priority Tax Claims.

4.    **Other Priority Claims**

The Responsible Person shall pay each holder of an Allowed Other Priority Claim the full unpaid amount of such Allowed Other Priority Claim in Cash.  The Responsible Person will direct the Liquidating Trust to make distributions to the holders of Allowed Other Priority Claims on the later of: (a) the Effective Date; or (b) the date on which such Other Priority Claim becomes an Allowed Claim.  To be clear, the order of payment of all Priority Tax Claims and Other Priority Claims will be consistent with the priority scheme established in section 507 of the Bankruptcy Code.  In any event, the Liquidating Trust shall make distributions to satisfy the Allowed Other Priority Claims not later than five years after the Petition Date. Unless otherwise provided by an order of the Bankruptcy Court, no fees, interest or penalties of any kind shall be paid to the holders of Allowed Other Priority Claims.

5.    **Alleged Secured Claims**

The Debtor does not believe that there are any Alleged Secured Claims.  The Debtor and/or the Responsible Person plan to object to any Claim which asserts a security interest because, among other things, all of the assets in the Estate are free and clear of liens, claims and encumbrances following the Sale Order, other orders of this Bankruptcy Court, and other applicable law.  Nevertheless, to the extent Allowed Claims are found to be secured, they will receive on account of such claim deferred Cash payments totaling at least the allowed amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estate's interest in such property.

11

**C.    Classification and Treatment of Claims and Equity Interests**

1.    **Summary**

a.    In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims, Priority Tax Claims and Other Priority Claims, as described in Article II of the Plan.

b.    The following table classifies Claims against and Equity Interests in the Debtor for all purposes including voting, confirmation and Distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest asserted in that Class is Allowed and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

c.    Summary of Classification and Treatment of Classified Claims and Equity Interests:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1-A | General Unsecured Claims | Impaired | Entitled to Vote |
| 1-B | Founders' Claims | Impaired | Entitled to Vote |
| 2 | Equity Interests | Impaired | Deemed to Reject |

2.    **Classification and Treatment of Claims and Equity Interests**

a.    General Unsecured Claims (Class 1-A)

i.    **Classification**:  Class 1-A consists of the General Unsecured Claims.[3]

ii.    **Treatment:**  Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtor prior to the Effective Date or agrees to alternative classification or treatment, each holder of an Allowed General Unsecured Claim shall receive their Pro Rata share of the Distributable Cash from the Liquidating Trust in full and final satisfaction, compromise, settlement and release

---

[3]    Unsecured Claims make up Classes 1-A and 1-B as secured claims do not exist due to the Sale Order.

12

of, and in exchange for, each Allowed General Unsecured Claim.  Distributions to holders of Allowed General Unsecured Claims shall be made as soon as practicable as the Responsible Person may determine.  For the avoidance of doubt, the amount of Distributions to holders of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be, in all respects, *pari passu*, with the funding coming from the same source, and the timing of Distributions to these Allowed Claims being simultaneous.  The treatment of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be equal in all respects under this Plan.

    iii.    **Voting:**  Class 1-A is Impaired and, therefore, holders of General Unsecured Claims (Class 1-A) are entitled to vote to accept or reject the Plan.

  b.    Founders' Claims (Class 1-B)

    i.    **Classification:**  Class 1-B consists of the Founders' Claims.[4]

    ii.    **Treatment:**  Except to the extent that a holder of an Allowed Founders' Claim has been paid by the Debtor prior to the Effective Date or agrees to alternative classification or treatment, each holder of a Founders' Claim shall receive their Pro Rata share of the Distributable Cash from the Liquidating Trust in full and final satisfaction, compromise, settlement and release of, and in exchange for, each Founders' Claim.  Distributions to holders of Allowed Founders' Claims shall be made as soon as practicable as the Responsible Person may determine.  For the avoidance of doubt, the amount of Distributions to holders of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be, in all respects, *pari passu*, with the funding coming from the same source, and the timing of Distributions to these Allowed Claims being simultaneous.  The treatment of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be equal in all respects under this Plan.

---

[4]    Unsecured Claims make up Classes 1-A and 1-B as secured claims do not exist due to the Sale Order.

        iii.    **Voting:**  Class 1-B is Impaired and, therefore, holders of Founders' Claims (Class 1-B) are entitled to vote to accept or reject the Plan.

   c.   Equity Interests (Class 2)

        i.    **Classification:**  Class 2 consists of Equity Interests.

        ii.    **Treatment:**  Holders of Equity Interests in Class 2 shall receive no Distribution under the Plan.  Equity Interests shall be automatically canceled, released, and extinguished on the Effective Date.

        iii.    **Voting:**  Class 2 will receive no Distribution under the Plan and, therefore, under section 1126(g) of the Bankruptcy Code, holders of Equity Interests (Class 2) are deemed to reject the Plan.

**D.**    **Nonconsensual Confirmation**

The Debtor intends to request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by the holders of Equity Interests in Class 2.  If holders of Claims in Classes 1-A or 1-B do not vote to accept the Plan by the requisite statutory majority provided in section 1126 of the Bankruptcy Code, the Debtor reserves the right to amend the Plan as well as request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**    **Vesting of Assets**

Except as otherwise provided in the Plan or Liquidating Trust Agreement, on the Effective Date, the Assets shall vest in and with the Liquidating Trust free and clear of all Liens, Claims, or other encumbrances because such Assets were transferred to, or received by, the Debtor free and clear of all Liens and Claims pursuant to the Sale Order.  For the avoidance of doubt, the transfer of the Assets to the Liquidating Trust shall be exempt from any stamp, other transfer, sales, use or other similar tax.  Further, after the Effective Date, the Debtor shall have no interest in the Liquidating Trust Assets and the transfer of the Assets to the Liquidating Trust is absolute and irrevocable.

**B.**    **The Liquidating Trust**

On the Effective Date, the Debtor, on its own behalf and on behalf of the beneficiaries, and the Responsible Person, shall execute the Liquidating Trust Agreement and all other necessary steps shall be taken to establish the Liquidating Trust.  Also on the Effective Date, all of the Debtor's Assets shall vest in the Liquidating Trust, including, but not limited to the Wind-Down

Amount, the right to any of the Debtor's deposits, the Debtor's other Cash and the Causes of Action. The Liquidating Trust shall be established for the sole purposes of adjudicating Claims, liquidating any remaining assets—if any—and distributing the Assets for the benefit of the beneficiaries of the Liquidating Trust, with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall be deemed to be a party in interest for purposes of contesting, settling or compromising objections to Claims and Causes of Action. The Liquidating Trust shall be vested with all the powers and authority set forth in the Plan and the Liquidating Trust Agreement. The Responsible Person shall be responsible for: administering the Liquidating Trust; reconciling and objecting to Claims; prosecuting, defending or otherwise resolving appeals of any orders entered by the Bankruptcy Court; pursuing Causes of Action; making distributions to holders of Allowed Claims; ensuring compliance with the orders of the Bankruptcy Court including the Sale Order; and taking such other action as is otherwise necessary to implement the terms of this Plan.

### C.    Responsible Person to Effectuate Distributions

The Responsible Person shall be deemed to have been appointed as the Estate's and the Liquidating Trust's representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Responsible Person shall be entitled to retain counsel and other professionals to carry out his duties. The Responsible Person shall not be required to post a bond.

The Responsible Person shall be appointed for the sole purpose of liquidating and distributing the remaining Assets which have been transferred to the Liquidating Trust, with no objective to continue or engage in the conduct of a trade or business. To the extent that the Responsible Person determines that it would generate Cash for the Liquidating Trust, the Responsible Person shall have the authority to pursue and settle the Causes of Action. The Responsible Person, in his sole discretion, may settle Causes of Action if such amount does not exceed $30,000. If such amount exceeds $30,000, the Responsible Person shall file a notice in the Chapter 11 Case providing parties in interest fourteen days' notice of the proposed settlement, so that if an objection is timely filed there will be a hearing to consider the reasonableness of the settlement under the standards applied under Bankruptcy Rule 9019 and if no objection is timely filed the settlement will be deemed approved. In accordance with this Plan, the Responsible Person shall (i) pay to each holder of an Allowed Administrative Claim, Allowed Priority Tax Claim and Allowed Other Priority Claim, the full unpaid amount of each such Allowed Claim according to the terms of this Plan (or such other amount agreed to by any of the foregoing parties); and (ii) make Distributions of the remaining Assets, in Cash, to the holders of Allowed General Unsecured Claims in Class 1-A and 1-B subject to the treatment of the claims put forth in Article III.B of the Plan.

### D.    Corporate Authority

All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need for further approvals, notices, or meetings of the Debtor's board of directors, board of managers, or Equity Interest holders, other than the notice provided by serving the Plan or notices of the entry of the Confirmation Order and of the Effective Date of the Plan on (i) all known holders of Claims and (ii) all current directors or managers of the Debtor. The Confirmation Order shall include provisions dispensing with the need for further

approvals, notices, meetings, or votes of Equity Interest holders and authorizing and directing any officer of the Debtor to execute any document, certificate, or agreement necessary to effectuate the Plan on behalf of the Debtor, which documents, certificates, and agreements shall be binding on the Debtor, the Creditors, and all Equity Interest holders.  Subject to compliance with the Liquidation Trust Agreement, from and after the Effective Date, the Responsible Person is vested with authority to take any action contemplated by this Plan on behalf of the Debtor and Liquidating Trust that would otherwise require the approval of members, board of directors, board of managers, managers, or officers of the Debtor or Liquidating Trust.  From and after the Effective Date, the authority, power and incumbency of the persons then acting as directors, managers, and/or officers of the Debtor shall be terminated and such directors, managers, and/or officers shall be deemed to have resigned or to have been removed without cause and have no further duties or responsibilities with respect to the Debtor.

### E.    Retention of Professionals

The Responsible Person may retain and compensate attorneys and other professionals to assist in his duties as Responsible Person on such terms (including on a contingency or hourly basis) as the Responsible Person deems reasonable and appropriate without Bankruptcy Court approval.  The payment of the reasonable fees and expenses of the Responsible Person's retained professionals shall be made in the ordinary course of business from the Assets and shall not be subject to the approval of the Bankruptcy Court.  Professionals of the Debtor shall be eligible for retention by the Responsible Person.

### F.    Compensation of the Responsible Person

The Responsible Person shall be entitled to reasonable compensation in the amount of $820 per hour of his recorded time, plus expense reimbursements as set forth in the Plan.  This hourly rate is subject adjustment annually beginning on January 1, 2025.  The Responsible Person is likely to engage other professionals, including those at his firm, with lower hourly rates than his own.

Notwithstanding, the Responsible Person owes fiduciary duties to the Debtor's Estate and the Liquidating Trust beneficiaries to maximize recoveries for the Debtor's creditors and the Liquidating Trust's beneficiaries.  Thus, the Responsible Person is limited by said fiduciary duties in the payment of any compensation under this section and costs and expenses in Section IV.G., below.

### G.    Costs and Expenses of the Responsible Person

The costs and expenses of the Responsible Person, including the reasonable and documented fees and expenses of the Responsible Person and each of his retained professionals and contractors, shall be paid out of the Assets prior to Distribution to holders of Classes 1-A and 1-B.

### H.    Liability

Neither the Responsible Person nor his professionals or contractors shall be liable for any act or omission taken or omitted to be taken other than acts or omissions resulting from the Responsible Person's, his professional's or his contractor's willful misconduct, gross negligence,

or fraud. The Responsible Person, his professionals and contractors may, in connection with the performance of their duties or functions, and in their sole absolute discretion, consult attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Responsible Person, his professionals or his contractors. Notwithstanding such authority, the Responsible Person, his professionals and his contractors shall be under no obligation to consult with attorneys, accountants or their agents, and their determination to not do so should not result in imposition of liability on the Responsible Person, his professionals or contractors unless such determination is based on willful misconduct, gross negligence, or fraud.

Any claim asserted against the Responsible Person or his professionals or contractors must be brought in the Bankruptcy Court.

## I.    Liquidation of the Debtor

After the Effective Date, the Responsible Person shall: (a) file a certificate of dissolution, together with all other necessary corporate documents, to effect the dissolution of the Debtor under the applicable laws of the State of its formation; and (b) complete and file the Debtor's final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of the Chapter 11 Case or through the date of such dissolution, as determined under applicable tax laws. The filing of the Debtor's certificate of dissolution shall be authorized and approved in all respects without further action by the members, managers, or officers of the Debtor; provided, however, in no event shall the Debtor be dissolved later than three years following the Effective Date absent further order of the Bankruptcy Court.

## J.    Books and Records

To the extent that the Debtor has any Books and Records as of the Effective Date, the Debtor shall transfer dominion and control over those Books and Records to the Responsible Person. The Responsible Person may abandon any of the Books and Records, that in his sole business judgment but subject to Court approval, neither he nor the Liquidating Trust need, and neither the Responsible Person nor the Liquidating Trust shall be responsible for maintaining any records. Pursuant to section 554 of the Bankruptcy Code, the relevant articles and sections of the Plan shall constitute motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the Books and Records and entry of the Confirmation Order shall be deemed approval thereof.

To the extent that Global Widget owes an obligation to cooperate or provide books and records to the Debtor related to the Assets which were part of the Sale, then that obligation shall now run to, and for the benefit of, the Responsible Person and Liquidating Trust.

## K.    Operations of the Debtor Between the Confirmation Date and the Effective Date

The Debtor shall continue to operate as debtor in possession during the period from the Confirmation Date through and until the Effective Date.

17

**L.    Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.

## ARTICLE V

## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

**A.    Voting of Claims**

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to Article III of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan or other order or orders of the Bankruptcy Court.

**B.    Distribution Dates**

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**C.    Disbursing Agent**

All distributions under the Plan by the Responsible Person shall be made by the Responsible Person as Disbursing Agent or such other entity designated by the Responsible Person as Disbursing Agent.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform his duties under the Plan, (b) make all Distributions contemplated by the Plan, (c) employ professionals to represent him with respect to his responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and shall have no (x) liability for actions taken in accordance with the Plan or in reliance upon information provided to him in accordance with the Plan or (y) obligation or liability for Distributions under the Plan to any party who does not hold an Allowed Claim at the time of Distribution or who does not otherwise comply with the terms of the Plan.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Responsible Person acting as the Disbursing Agent (including, without limitation, reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash from

23245129.v4

the Assets in the ordinary course of business and without need for an order of the Bankruptcy Court.

**D.      Record Date for Distributions**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any periods provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Responsible Person shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the Responsible Person shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtor as of the Record Date and is available to the Responsible Person.

**E.      Delivery of Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Disbursing Agent at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim filed by such holder or (b) the last known address of such holder if no Proof of Claim is filed or if the Liquidating Trust has not been notified in writing of a change of address.

**F.      Undeliverable and Unclaimed Distributions**

In the event that any Distribution to any holder of an Allowed Claim made by the Disbursing Agent is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder; provided, however, that all Distributions to holders of Allowed Claims made by the Disbursing Agent that are unclaimed for a period of 120 days after Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Liquidating Trust and any entitlement of any holder of any Claims to such further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim may receive future Distributions on account of such Claim by contacting the Responsible Person at some point prior to the final Distribution. Further, undeliverable and/or unclaimed Distributions to the extent they are revested in the Liquidating Trust shall automatically and immediately become Distributable Cash.

**G.      Manner of Cash Payments Under the Plan**

Except as otherwise provided herein, Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Responsible Person.

### H.    Compliance with Tax Requirements

In connection with this Plan and all instruments issued in connection herewith and Distributions hereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  As a condition to receiving any Distributions, all holders of General Unsecured Claims are required to provide any information necessary to effect information reporting and the withholding of such taxes on Form W-8 or W-9 ("Tax Information") within 30 days of a request by the Responsible Person and prior to receiving a Distribution.  Failure to comply will result in the Claimant's distribution being treated as undeliverable or unclaimed and forfeited.  If the requisite forms are not returned by the date of the Final Distribution, the Claim shall be forever barred.  The Liquidating Trust shall not be liable for, and the Responsible Person or his Disbursing Agent shall not be required to make, a Distribution prior to receiving the Tax Information.

Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### I.    No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### J.    Interest on Claims

Except as specifically provided in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Claim that is a Disputed Claim in respect of the period from the Effective Date to the date an interim or final Distribution is made thereon if and after the Disputed Claim becomes and Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

### K.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

23245129.v4

### L.    Setoff and Recoupment

The Responsible Person may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtor or its Estate may have against the holder of such Claim but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, the Responsible Person or the Liquidating Trust of any right of setoff or recoupment that any of them may have against the holder of any Claim.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.  Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; provided, however, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtor and its Estate, the Responsible Person and the Liquidating Trust with respect thereto are reserved.

### M.    Closing of the Chapter 11 Case

The Responsible Person shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Case.

### N.    *De Minimis* Distributions; Charitable Donation

Notwithstanding anything to the contrary therein, the Responsible Person shall not be required to make a Distribution to any holder of an Allowed Claim if the dollar amount of the Distribution is less than $50 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  On or about the time that the final Distribution is made, the Responsible Person may make a charitable donation with undistributed funds if, in the reasonable judgment of the Responsible Person, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the holders of Claims who would otherwise be entitled to such Distributions.  Such charitable donation may be to the American Bankruptcy Institute Foundation, if the Responsible Person so chooses.

### O.    United States Trustee Fees

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code shall be paid by the Responsible Person using the Assets.  The Responsible Person shall be responsible for Filing quarterly reports for the Liquidating Trust in a form reasonably acceptable to the U.S. Trustee.

### P.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim or other request was required to be Filed or submitted and was first Filed or submitted after the applicable bar date in the Chapter 11 Case, including, without limitation, the deadlines established herein, or in the Bar Date Notice, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without need for (a) any further action by the Responsible Person or the Liquidating Trust or (b) an order of the Bankruptcy Court.  Nothing in

this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

## ARTICLE VI

## DISPUTED CLAIMS

### A.    No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, the Responsible Person shall not make any Distribution on account of any Disputed Claim unless and until such Claim becomes Allowed.

### B.    Resolution of Disputed Claims; Reserves for Disputed Claims

The Responsible Person shall have the right to make and file objections to Claims in the Bankruptcy Court on behalf of the Liquidating Trust.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.  After the Effective Date, the Liquidating Trust shall be the successor in interest to any objections to Claims filed by the Debtor before the Effective Date, and the Responsible Person shall be responsible for prosecuting and/or settling those objections.  Should a claimant elect to compromise, settle or otherwise resolve any objections asserted by the Responsible Person, the Responsible Person may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.  The Responsible Person, in his sole discretion, may settle Causes of Action if such amount does not exceed $30,000.  If such amount exceeds $30,000, the Responsible Person shall file a notice in the Chapter 11 Case providing parties in interest fourteen days' notice of the proposed settlement, so that if an objection is timely filed there will be a hearing to consider the reasonableness of the settlement under the standards applied under Bankruptcy Rule 9019 and if no objection is timely filed the settlement will be deemed approved.

In connection with any Distributions to holders of Allowed Claims, the Responsible Person shall set aside one or more Disputed Claims Reserves in an amount that the Responsible Person determines would likely have been distributed to the holder of Disputed Claims.  In each instance, the Responsible Person should establish the amount to be reserved on account of a Disputed Claim by determining the amount of Distributable Cash equal to the Distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of: (a) the amount of the Disputed Claim; (b) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance or distribution, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim; or (c) such other amount as may be agreed upon by the holder of such Disputed Claim and the Responsible Person.

### C.    Objection Deadline

All objections to Disputed Claims shall be Filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court.

### D.    Estimation of Claims

At any time, the Responsible Person may request that the Bankruptcy Court estimate any Disputed Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Responsible Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or the Responsible Person may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

The Plan shall constitute a motion to reject all executory contracts and unexpired leases not previously rejected or assumed and assigned pursuant to an order of the Bankruptcy Court, and the Estate and the Liquidating Trust shall have no further liability thereunder.  The entry of the Confirmation order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interests of the Debtor, the Estate and all parties in the Chapter 11 Case.  Said rejected executory contracts and unexpired leases shall also be deemed terminated upon rejection. For the avoidance of doubt, the following agreements shall not be deemed to be rejected or terminated upon entry of the Confirmation Order: (a) any executory contract or unexpired lease previously assumed, assumed and assigned, or rejected by the Debtor; (b) any executory contract or unexpired lease previously expired or terminated pursuant to its own terms before the Petition Date; (c) any asset purchase agreement or ancillary agreement with Global Widget related to the Sale; (d) any executory contract or unexpired lease that is the subject of a pending motion to assume or reject on the Confirmation Date; and (e) any rights or benefits under any insurance policy in which the Debtor is a beneficiary.  The Debtor reserves the right to supplement the Plan with a schedule of additional agreements in a Plan supplement.

### B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Claims created by the rejection of executory contracts and unexpired leases pursuant to this article of the Plan, or the termination of any executory contract or unexpired lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Responsible Person no later than 30 days after the entry of the Confirmation Order; provided, however, that this provision shall not be construed to enlarge or extend any claims

bar date applicable to previously rejected contracts. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to this article of the Plan for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Estate, the Liquidating Trust and the Responsible Person, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in this article of the Plan. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of the Plan.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.    Conditions Precedent

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The Confirmation Order has become a Final Order;[5]

2.      There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the exculpations provided for herein;

3.      The appointment of the Responsible Person shall have been confirmed by entry of the Confirmation Order or other order of the Bankruptcy Court; and

4.      All United States Trustee Fees incurred before the entry of the Confirmation Order shall have been paid.

### B.    Waiver

Notwithstanding the conditions in the Plan, the Debtor may decide to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent. Any such written waiver of a condition precedent set forth in Article VIII of the Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

---

[5] The Debtor may request that the Final Order become immediately final and not subject to the 14-day waiting period of Bankruptcy Rule 6004.

23245129.v4

# ARTICLE IX

# INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### A.    Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith settlement and compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement as fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

### B.    Title to Assets; Discharge of Liability

Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Liquidating Trust free and clear of all Claims, Equity Interests, Liens, encumbrances, charges, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor arising prior to the Effective Date, except as may be otherwise provided in the Plan.

### C.    Binding Effect

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor, the Liquidating Trust, and any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

### D.    Discharge of Claims

Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims, of any kind, nature, or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided herein, upon the Effective Date, all existing Claims against the Debtor in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Liquidating Trust, its respective successors or assignees, or any of its respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Equity Interest in the Debtor.  Nothing in Article IX.D of the Plan should be interpreted as a discharge of the Debtor's or Liquidating Trust's rights or obligations under the Plan.

### E.      Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan will be in complete satisfaction, discharge, and release, of any and all Claims, whether known or unknown, against the Debtor or the Liquidating Trust or any of their assets or properties, regardless of whether the property has been distributed or retained pursuant to the Plan.  Without limiting the generality of the foregoing, the Debtor or the Liquidating Trust will be discharged from any and all Claims and debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim accepted the Plan.  Except as otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor arising before the Effective Date.  Under section 524 of the Bankruptcy Code, the discharge granted under this section shall avoid any judgment against the Debtor at any time obtained (to the extent it relates to a discharged Claim), and operates as an injunction against the prosecution of any action against the Debtor or the Estate (to the extent such action relates to a discharged claim). Nothing in Article IX.F of the Plan should be interpreted as a discharge of the Debtor's or the Liquidating Trust's rights or obligations under the Plan.

### F.      Exculpation

**Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Claim, Cause of Action, remedy, loss, and liability for any act taken or act omitted to be taken or Claim arising after the Petition Date in connection with, arising out of, or related to: the Chapter 11 Case; the administration thereof; the negotiation, formulation, preparation, dissemination, implementation, administration, confirmation, consummation, and pursuit of the Final Financing Order, the Sale, the Disclosure Statement, the Plan, or the Liquidating Trust Agreement; the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or property to be distributed under the Plan; any agreements, instruments, or other documents or transactions related to any of the foregoing; or negotiations regarding or concerning any of the foregoing; but excepting acts or omissions determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud; provided, however, in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.**

### G.      Limitations on Exculpation

Nothing in Article IX.F of the Plan ("Exculpation") shall (i) be construed to release or exculpate any person from, or require indemnification of any Person against losses arising from, the fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or (ii) limit the liability of the professionals of

the Debtor to its client pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

**H.    Preservation of Causes of Action**

1.    Vesting of Causes of Action

a.    Except as expressly assigned or released in the Plan or by prior Orders of the Bankruptcy Court, including the Sale Order, the Liquidating Trust shall reserve and retain, in accordance with section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, any and all of the Debtor's Causes of Action, including without limitation any actions for claims specifically listed on the Debtor's schedules whether or not listed as contingent or disputed. On and after the Effective Date, the Liquidating Trust is granted authority and standing, on behalf of the Debtor and the Estate, to investigate and initiate any Causes of Action granted to it pursuant to this Plan. The Causes of Action may include but are not limited to (i) any and all Causes of Action pursuant to or arising under applicable bankruptcy or non-bankruptcy law, including but not limited to claims arising in tort, contract, or non-bankruptcy statutes, or any applicable section of the Bankruptcy Code; (ii) objections to Claims; (iii) claims that the Estate is entitled to setoff or recoupment against Entities holding Claims against the Estate; and (iv) any other litigation or Causes of Action, whether legal, equitable, or statutory in nature, arising out of or in connection with the Debtor's business, assets, or operations, or otherwise affecting the Debtor, against any Entities or Representative. For the avoidance of doubt, the Liquidating Trust shall retain the right to object to Administrative and Priority Claims, and to raise any of the Debtor's affirmative defenses, including setoff and recoupment, regarding the same, and pursue all Causes of Action arising under sections 505, 544, 548, 549, 550, 551, 553, and 1123(b)(3)(B) of the Bankruptcy Code, to the extent necessary to recover amounts avoided under any of the foregoing sections of the Bankruptcy Code. Notwithstanding the retention of the foregoing Causes of Action, the Debtor waives any claims arising under section 547 of the Bankruptcy Code, and the Liquidating Trust shall not retain the right to pursue same. On behalf of the Debtor and its Estate, the Liquidating Trust reserves the rights to any Causes of Action that may be identified on or after the Effective Date. The recoveries, if any, from any litigation brought by the Liquidating Trust, will depend on many factors, which cannot be predicted at this time. The Liquidating Trust may elect not to pursue any Causes of Action the pursuit of which the Liquidating Trust deems not to be in the best interest of the beneficiaries of the Liquidating Trust and the holders of Allowed General Unsecured Claims.

b.    The Responsible Person's right to commence and prosecute Causes of Action shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action

27

against them as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against them.  No Entity shall be entitled to assert any defense to a Cause of Action based, in whole or in part, upon confirmation of the Plan, and no preclusion doctrine, including without limitation the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), and laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan.  The foregoing shall be sufficient for all purposes to satisfy the requirements of the standard set forth in *Browning v. Levy,* 283 F.3d 761 (6th Cir. 2002) and *Nestlé Waters N. Am., Inc. v. Mt. Glacier LLC (In re Mt. Glacier LLC)*, 877 F.3d 246 (6th Cir. 2017).

c.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Responsible Person, on behalf of the Liquidating Trust, shall have the exclusive right, but not the obligation, to investigate, institute, prosecute, abandon, settle or compromise any Causes of Action, in his or her sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

2.  Preservation of All Causes of Action Not Expressly Settled or Released

a.  Unless a Cause of Action against any Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor and/or the Estate expressly reserve such Cause of Action for the Liquidating Trust and the Responsible Person and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or the Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt,  the releases contained in the Plan) or any other Final Order (including the Confirmation Order). In addition, the Debtor and the Estate expressly reserve the right of the Responsible Person, on behalf of the Liquidating Trust, to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

b.  Subject to the description in the immediately preceding paragraph and to any Final Order, any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or

28

leased equipment or property from or to the Debtor should assume that any such obligation, transfer, or transaction may be reviewed by the Responsible Person subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Person filed a Proof of Claim against the Debtor in the Chapter 11 Case; (ii) the Debtor has objected to any such Person's proof of Claim; (iii) any such Person's Claim was included in the Schedules; (iv) the Debtor has objected to any such Person's scheduled Claim; or (v) any such Person's scheduled Claim has been identified by the Debtor as disputed, contingent or unliquidated.

3.      Settlement of Causes of Action.  The Responsible Person, in his sole discretion, may settle Causes of Action if such amount does not exceed $30,000.  If such amount exceeds $30,000, the Responsible Person shall file a notice in the Chapter 11 Case providing parties in interest fourteen days' notice of the proposed settlement, so that if an objection is timely filed there will be a hearing to consider the reasonableness of the settlement under the standards applied under Bankruptcy Rule 9019 and if no objection is timely filed the settlement will be deemed approved.

**I.      Injunction**

4.      From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of their respective successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or exculpated or to be released or exculpated pursuant to the Plan or the Confirmation Order.

5.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of their respective successors and assigns, and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  For avoidance of doubt, such injunction does not preclude the pursuance of claims against third parties, and the terms "successors and assigns" does not include buyers of the Debtor's assets.

6.      The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, against the Debtor or any of its assets or properties.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtor shall be satisfied and released in full.

7.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied, discharged, resolved, settled and/or released hereby, from:

a.      Commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Estate, the Responsible Person, the

Liquidating Trust, and each of their respective successors and assigns, and their assets and properties;

b.  Enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of the respective successors and assigns, and their assets and properties;

c.  Creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of their respective successors and assigns, and their assets and properties;

d.  Asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or Estate of the Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed Proof of Claim; and

e.  Commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim, Lien, Equity Interest or Cause of Action released or settled hereunder.

**J.  Releases of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, and to the extent not already released in the Sale Order, all Liens against property of the Estate shall be fully released and discharged as of the Effective Date.

**ARTICLE X**

**RETENTION OF JURISDICTION**

**A.  Scope of Retained Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Responsible Person, the Liquidating Trust and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.  Grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Case by the Debtor for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods

ending on or before the Effective Date, including, but not limited to, Accrued Professional Compensation;

3.      Resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.      Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Responsible Person after the Effective Date, provided, however, that the Debtor and the Estate and, following the Effective Date, the Responsible Person and the Liquidating Trust shall reserve the right of the Responsible Person to commence actions in all appropriate jurisdictions;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan;

7.      Enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtor or Liquidating Trust, as applicable, wherever located;

8.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.      Issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

10.      Enforce the exculpations set forth in Article IX of the Plan;

11.      Resolve any cases, controversies, suits or disputes with respect to the releases, injunction, and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.      Enforce orders entered by the Court in the Chapter 11 Case;

13.      Enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.      Resolve any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or documents adopted in connection with the Plan; and

23245129.v4

15.     Enter an order and/or the Final Decree concluding the Chapter 11 Case.

**B.     Exclusive Jurisdiction**

The Bankruptcy Court shall have exclusive jurisdiction to determine whether a lawsuit, action or other activity relating to the Exculpated Parties is violative of the exculpations set forth herein.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**A.     Modification of Plan**

Subject to the limitations contained in the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Court and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor or the Responsible Person may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency on the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. The Debtor also reserves the right to make immaterial modifications to the Plan prior to the Effective Date, including, but not limited to, formatting, grammar, etc.

**B.     Revocation of Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent chapter 11 plans; provided, however, that the filing of this Plan shall not be deemed a waiver of the Debtor's exclusivity under section 1121 of the Bankruptcy Code. If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

**C.     Binding Effect**

On the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

### D.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### E.    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

### F.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.  Neither the filing of the Plan, any statement or provisions contained herein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the holders of Claims or Equity Interests or other parties in interest or (2) any holder of a Claim or other party in interest prior to the Effective Date.

### G.    Article 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### H.    Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtor and each of its Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

### I.    Further Assurances

The Debtor, the Responsible Person, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, and as applicable, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

23245129.v4

### J.    Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent electronically or by first-class U.S. mail, postage prepaid as follows:

<u>To the Responsible Person &</u>
<u>Liquidating Trust:</u>

Soneet R. Kapila
KapilaMukamal LLP
1000 South Federal Highway, Ste. 200
Fort Lauderdale, Florida 33316
Telephone: (954) 761-1011
E-mail: skapila@kapilamukamal.com

<u>To the Debtor:</u>

James R. Irving
Jacob S. Margolies
Dentons Bingham Greenebaum LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail:  james.irving@dentons.com
              jacob.margolies@dentons.com

### K.    Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### L.    No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e), 6004(h) and 7062.

### M.    Survival of Carve-Outs

Notwithstanding anything else in this Plan to the contrary, the Carve-Outs established under the Final Financing Order entered in the Chapter 11 Case shall survive to the extent that the Debtor's professional fees are not fully paid as of the Effective Date.

### N.    Exemption

Under section 1145 of the Bankruptcy Code, the issuance of the beneficial interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Responsible Person determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the

23245129.v4

Responsible Person shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

**O.      Substitution of the Liquidating Trust for the Debtor**

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtor in all pending matters including but not limited to (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, including any appeals, without the need or requirement for the Responsible Person to file motions or substitutions of parties and counsel.

**P.      Survival of Previous Orders from the Bankruptcy Court**

Nothing in this Plan is intended to, or does, alter the terms of any other order entered by the Bankruptcy Court in this Chapter 11 Case, including, without limitation, the Interim Financing Order, the Final Financing Order, the Sale Order, the asset purchase agreements and other documents evidencing the sale of substantially all of the Debtor's assets to Global Widget, or the rights of any party under any of those orders and agreements.

## ARTICLE XII

## SOLICITATION AND VOTING PROCEDURES

The Bankruptcy Court entered the Disclosure Statement Order approving the adequacy of the Disclosure Statement and the Solicitation Procedures.  The Solicitation Procedures were approved in the Disclosure Statement Order.  In addition to approving the Solicitation Procedures, the Disclosure Statement Order established certain dates and deadlines, including the date for the Confirmation Hearing, the deadline for parties to object to confirmation of the Plan, the Voting Record Date and the Voting Deadline.  The Disclosure Statement Order will also approve the forms of Ballots and certain confirmation-related notices.  The Disclosure Statement Order and the Solicitation Procedures should be read in conjunction with the Disclosure Statement.

**A.      Solicitation Package**

**1.      Contents of the Solicitation Package**

The following materials shall constitute the solicitation package:

      i.  Plan;
     ii.  Disclosure Statement;
    iii.  Disclosure Statement Order;
    iv.  Confirmation Hearing Notice;
     v.  Unimpaired/Impaired Non-Voting Notices (as applicable)
    vi.  Appropriate Ballot; and
   vii.  Pre-addressed, postage pre-paid return envelope.

2.    **Distribution of Solicitation Package**

The Debtor shall serve, or cause to be served, all of the materials in the solicitation package on holders of the General Unsecured Claims in Class 1-A and the Founders' Claims in Class 1-B.

The Debtor shall serve, or cause to be served, a notice of non-voting status and a notice of the Confirmation Hearing on holders of the Equity Interests in Class 2.

The Debtor also shall serve, or cause to be served, all of the materials in the solicitation package (except Ballots) on (a) the U.S. Trustee; and (b) the United States Attorneys' Office.

**B.    Voting Instructions and General Tabulation Procedures**

1.    **Voting Record Date**

The Bankruptcy Court has set the Voting Record Date as set forth in the Disclosure Statement Order.

2.    **Voting Deadline and Ballot Submission**

The Bankruptcy Court has set the Voting Deadline as set forth in the Disclosure Statement Order.

For holders of all Claims, the Voting Agent will answer questions regarding the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan and provide additional copies of all materials and oversee the voting tabulation.  The Voting Agent will also process and tabulate ballots for each Class entitled to vote to accept or reject the Plan.

TO BE COUNTED AS VOTES TO ACCEPT OR REJECT THE PLAN, BALLOTS CAST BY HOLDERS IN THE CLASSES ENTITLED TO VOTE MUST BE RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE, AT THE ADDRESS LISTED ON THE BALLOT, WHETHER BY FIRST CLASS MAIL, OVERNIGHT COURIER OR PERSONAL DELIVERY. THE BALLOTS AND THE PRE-ADDRESSED, POSTAGE PRE-PAID ENVELOPES ACCOMPANYING THE BALLOTS WILL CLEARLY INDICATE WHERE THE BALLOT MUST BE RETURNED.

Ballots must be actually received by the Voting Agent.  If holders of Claims have questions on the procedures for voting on the Plan they may call the Debtor's counsel (502) 587-3606.

To obtain an additional copy of the Plan, the Disclosure Statement or other solicitation package materials (except Ballots), parties may contact the Debtor's counsel (Dentons Bingham Greenebaum LLP, Attn: James R. Irving, 3500 PNC Tower, 101 South Fifth Street, Louisville, KY 40202 or james.irving@dentons.com).

Ballots received after the Voting Deadline will not be counted by the Debtor in connection with the Debtor's request for confirmation of the Plan.

### 3. Who May Vote

In general, a holder of a claim or interest may vote to accept or to reject a plan if no party in interest has objected to such claim or interest, and the claim or interest is Impaired by the Plan. If the holder of an Impaired claim or interest will not receive any Distribution under the Plan in respect of such Claim or Equity Interest, the Bankruptcy Code deems such holder to have rejected the plan. If the Claim or Equity Interest is not Impaired, the Bankruptcy Code deems that the holder of such Claim or Equity Interest has accepted the plan and the plan proponent need not solicit such holder's vote.

Pursuant to section 1124 of the Bankruptcy Code, a class of Claims or Equity Interests is deemed to be "impaired" under a plan unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the Claim or Equity Interest entitles the holder of such class Claim or Equity Interest; (b) cures any default and reinstates the original terms of such obligation; or (c) provides that, on the consummation date, the holder of such Claim or Equity Interest receives cash equal to the allowed amount of that claim or, with respect to any Equity Interest, any fixed liquidation preference to which the holder of such Equity Interest is entitled or any fixed price at which the Debtor may redeem the security.

Only holders of the General Unsecured Claims in Class 1-A and Founders' Claims in Class 1-B shall be entitled to vote on the Plan.

### 4. General Ballot Tabulation

The following voting procedures and standard assumptions shall be used in tabulating Ballots:

a. Except as otherwise provided herein, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Voting Agent shall reject such Ballot as invalid and, therefore, the Debtor shall decline to count it in connection with confirmation of the Plan;

b. The Voting Agent will date-stamp all Ballots when received. The Voting Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court;

c. As soon as reasonably practicable before the Confirmation Hearing, unless such other date is set by the Bankruptcy Court, the Voting Agent will File a voting report with the Bankruptcy Court. The voting report shall, among other things, delineate every irregular Ballot including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking original signatures or lacking necessary information, received via facsimile or electronic mail, or damaged. The voting report shall indicate the Committee's intentions with regard to such irregular Ballots;

d.      The method of delivery of Ballots to be sent to the Voting Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Voting Agent actually receives the original executed Ballot;

e.      No Ballot should be sent to the Debtor or the Debtor's agents – but only to the Voting Agent, and if not sent to the Voting Agent, Ballots will not necessarily be counted;

f.      If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot;

g.      Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted;

h.      The Debtor, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and such waivers will be documented in the voting report;

i.      Neither the Debtor nor any other Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the voting report, nor will any of them incur any liability for failure to provide such notification;

j.      Unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

k.      In the event a designation of lack of good faith is requested by a party-in-interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted or rejected;

l.      Subject to any contrary order of the Bankruptcy Court, the Debtor reserves the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtor, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, that any such rejections will be documented in the voting report; and

m.      The following Ballots shall not be counted in determining acceptance or rejection of the Plan:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder; (ii) any Ballot cast by an Entity that does not hold a General Unsecured Claim in Class 1-A or a Founders' Claim in Class 1-B; (iii) any unsigned Ballot lacking an original signature; (iv) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and (v) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein.

# ARTICLE XIII

## CONFIRMATION PROCEDURES

### A.    Confirmation Hearing

**The Confirmation Hearing will commence on the det set in the Disclosure Statement Order**, before the Honorable Scott M. Grossman, United States Bankruptcy Court for the Southern District of Florida, U.S. Courthouse, 299 East Broward Boulevard, Courtroom 308, Fort Lauderdale, FL 33301.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

The Plan Objection Deadline is set in the Disclosure Statement Order.

All Plan Objections must be Filed with the Bankruptcy Court and served on the Debtor in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline.

The Debtor's proposed schedule will provide Entities sufficient notice of the Plan Objection Deadline as required by Bankruptcy Rule 2002(b).  The Debtor believes that the Plan Objection Deadline will afford the Bankruptcy Court, the Debtor and other parties in interest reasonable time to consider the Plan Objections prior to the Confirmation Hearing.

THE BANKRUPTCY COURT MAY NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY FILED AND SERVED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.

### B.    Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The Debtor believes:

      a.    The Plan complies with the applicable provisions of the Bankruptcy Code;

      b.    The Debtor has complied with the applicable provisions of the Bankruptcy Code;

      c.    The Plan has been proposed in good faith and not by any means forbidden by law;

      d.    Any payment to be made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable;

      e.    Either each holder of an Impaired Claim or Equity Interest will have accepted the Plan, or will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the

amount that such holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code;

f.      The Classes that are entitled to vote on the Plan will have accepted the Plan;

g.      Except to the extent the holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims, Priority Tax Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable;

h.      Confirmation of the Plan is not likely to be followed by the liquidation (other than as contemplated by the Plan) or the need for further financial reorganization of the Debtor or any successors thereto under the Plan;

i.      The Debtor will have paid the required filing fees pursuant to 28 U.S.C. § 1930; and

j.      There will be sufficient funds for the Responsible Person to pay quarterly fees to the U.S. Trustee on or before the last day of the calendar month following the calendar quarter for which the fee is owed in the Chapter 11 Case, until the case is closed converted or dismissed, whichever occurs first.

1.      **Best Interests of Creditors Test/Liquidation Analysis**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation, that the Plan provides, with respect to each Class, that each holder of a Claim or an Equity Interest in such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan property with a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court must:  (a) estimate the Cash liquidation proceeds that a chapter 7 trustee would generate if the Chapter 11 Case was converted to a chapter 7 case and the assets of the Estate were liquidated; (b) determine the liquidation Distribution that each non-accepting holder of a Claim or an Equity Interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation Distribution to the Plan Distribution that such holder would receive if the Plan were confirmed.

In chapter 7 cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for: (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.

The Debtor believes that the value of any Distributions if the Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Plan because, among other reasons, Distributions in a chapter 7 case may not occur until a later date than Distributions under the Plan would occur, thereby reducing the

40

present value of such Distributions.  In the event that the Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code, it is possible that Distribution of the proceeds of a liquidation could be delayed for a significant period while the chapter 7 trustee and its advisors become knowledgeable about, among other things, the Chapter 11 Case and the Claims against the Debtor.  The proceeds received in a chapter 7 liquidation would likely be further depleted by the fees and expenses of a chapter 7 trustee and the trustee's professional advisors, as well as by the accrual of claims throughout the chapter 7 period that must be paid on a priority basis.

As more fully set forth in the hypothetical liquidation analysis (the "Liquidation Analysis") attached hereto as **Exhibit B**, the Debtor estimates that on the Effective Date, the Estate will have approximately $1,500,000 in available Cash after the payment of Administrative and Priority Claims.  The Debtor believes that such amount will exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtor and its Estate, in accordance with the Plan and the Liquidating Trust Agreement.  After considering the effects that a chapter 7 liquidation would have on the funds available for Distribution to holders of Allowed Claims, including, among other things, fees payable to a chapter 7 trustee, the Debtor believes that holders of Allowed Claims will receive not less than such holders would receive if this Chapter 11 Case was converted to a chapter 7 case.

In light of the foregoing, the Debtor believes that confirmation of the Plan will provide each holder of an Allowed Claim with a greater recovery than such holder would receive pursuant to the liquidation of the Debtor and the Estate under chapter 7 of the Bankruptcy Code.

## 2.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization, unless the Plan contemplates such liquidation.  Indeed, section 1123(b)(4) of the Bankruptcy Code permits liquidation plans that "provide for the sale of all or substantially all of the property of the estate, and the Distribution of the proceeds of such sale among holders of claims or interests" in chapter 11 proceedings.  The Plan provides for the liquidation of the Debtor through the administration and collection of current cash holdings and future cash payments payable to the Estate, prosecution and liquidation of any remaining Causes of Action, and distributing funds derived therefrom in accordance with the Plan.  Based on current estimates, the Debtor maintains that there is a reasonable expectation that the payments required to be made during the terms of the Plan will, in fact, be made.

## 3.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described below, each class of Claims or Equity Interests that is Impaired under the Plan, accept the Plan.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of Impaired Claims or Equity Interests as acceptance by holders of at least two-thirds in amount and more than one-half in number of such Claims or Equity Interests.

The General Unsecured Claims in Class 1-A and the Founders' Claims in Class 1-B are Impaired under the Plan, and as a result, the holders of Claims in Classes 1-A and 1-B are entitled

41

to vote on the Plan. Such Voting Classes must accept the Plan for the Plan to be confirmed, or must be "crammed down" under section 1129(b) of the Bankruptcy Code. As stated above, Classes 1-A and 1-B will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Claims in either of these Classes (other than any interests designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

As described more fully herein, the Bankruptcy Court may confirm the Plan over the deemed rejections of the Plan by the Equity Interests in Class 2 if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the Equity Interests in Class 2. The Debtor believes that the Plan satisfies these requirements and the Debtor may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.

### C.    Contact for More Information

Any interested party desiring further information about the Plan may contact legal counsel to the Debtor:

James R. Irving
Jacob S. Margolies
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 587-3606; (502) 587-3563
E-mail:  james.irving@dentons.com;
jacob.margolies@dentons.com

## ARTICLE XIV

## PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.

### A.    Certain Bankruptcy Law Considerations

#### 1.    Parties in Interest May Object to the Debtor's Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes that the classification of Claims and

42

Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created (i) two Classes of Claims encompassing Claims that are substantially similar to the other Claims in such Classes, and (ii) one Class of Equity Interests encompassing Equity Interests that are substantially similar to the other Equity Interests in that Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.    Failure to Satisfy Vote Requirement

If votes are received in an amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may seek approval of an alternative chapter 11 plan. There can be no assurance the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

### 3.    The Debtor May Not Be Able to Secure Confirmation of the Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, including, among other requirements, a finding by the Bankruptcy Court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of Distributions to non-accepting holders of Claims and Equity interests within a particular class under such plan will not be less than the value of Distributions such holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement, the balloting procedures and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation have not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Confirmation of the Plan is also subject to certain conditions as described in the Plan. If the Plan is not confirmed, it is unclear what Distributions, if any, holders of Allowed Claims would receive with respect to their Allowed Claims.

The Debtor, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for confirmation of the Plan. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such a less favorable treatment could include a Distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan.

### 4.    Nonconsensual Confirmation

43

The Bankruptcy Court may confirm the Plan over the rejection or deemed rejection of the Plan by classes of Claims or Equity Interests if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such class.   Because the Debtor seeks a cramdown under section 1129(b) of the Bankruptcy Code with respect to the deemed rejection of the Plan by holders of the Equity Interests in Class 2, the Debtor must satisfy the factors listed below.

*No Unfair Discrimination*.  This test applies to classes of Claims or Equity Interests that are equal priority and are receiving different treatment under a plan of reorganization.  The test does not require that the treatment be the same or equivalent, but that such treatment be "fair."

*Fair and Equitable Test*.  This test applies to classes of different priority (e.g., unsecured versus secured) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class.  As to the dissenting class, the test sets different standards, depending on the type of claims or interests in such class:

*Unsecured Claims*.  Either (i) each holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed unsecured claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain any property under the plan of reorganization.

*Equity Interests*.  Either (i) each equity interest holder will receive or retain under the plan of reorganization property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock and (b) the value of the stock or (ii) the holders of interests that are junior to the equity interests of the dissenting class will not receive or retain any property under the plan or reorganization.

The Debtor believes the Plan will satisfy both the "no unfair discrimination" requirement and the "fair and equitable" requirement, notwithstanding that Class 2 will receive no Distribution, because as to such Class, there are no classes of equal priority receiving more favorable treatment and no class that is junior to such dissenting Class will receive or retain any property on account of the Equity Interests in such class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.

5.      **The Debtor May Object to the Amount or Classification of a Claim**

Except as otherwise provided in the Plan, the Debtor (and any successor in interest to the Debtor) reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim where such Claim is subject to an objection.  Any holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated Distributions described in this Disclosure Statement.

6.      **Risk of Non-Occurrence of the Effective Date**

23245129.v4

Although the Debtor believes that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### 7. Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan

The Distributions available to holders of Allowed Claims under the Plan can be affected by a variety of contingencies. The occurrence of any and all such contingencies, which could affect Distributions available to holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Class to accept or reject the Plan or require any sort of revote by the Impaired Class.

### B. Risk Factors That May Affect Distributions Under the Plan

### 1. The Debtor Cannot State with Any Degree of Certainty What Recovery Will Be Available to Holders of Allowed Claims in a Voting Class

A number of unknown factors make certainty in creditor recoveries impossible. First, the Debtor cannot know with any certainty, at this time, the number or amount of Claims that will ultimately be Allowed. Second, the Debtor cannot know with any certainty, at this time, the Cash value of the Assets that will be distributed under the terms of the Plan. For example, the Debtor is not certain what the Liquidating Trust and Responsible Person will recover on account of amounts owed by recipients of avoidable transfers. Nevertheless, the Debtor has made a good faith effort in disclosing all risk factors, the amount of Claims it believes will be Allowed, the assets available for the Responsible Person to make Distributions from, and the expected recoveries of each Class.

### 2. Actual Amounts of Allowed Claims May Differ from the Estimated Claims and Adversely Affect the Recovery on Claims

The Claims estimates set forth herein are based on various assumptions. The actual amounts of Allowed Claims may differ significantly from those estimates should one or more underlying assumption prove to be incorrect. Such differences may adversely affect the percentage recovery to holders of Allowed Claims under the Plan. Additionally, the Debtor has made certain assumptions, as described herein, regarding liquidation under chapter 7 of the Bankruptcy Code, which should be read carefully.

### C. Disclosure Statement Disclaimer

### 1. No Waiver of Causes of Action or Right to Object

The vote by a holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor, the Liquidating Trust or the Responsible Person to object to that holder's Allowed Claim or to bring Causes of Action regardless of whether any Claims or Causes of Action of the Debtor or the Estate are specifically or generally identified herein. Further, nothing in this Disclosure Statement or in the Plan should be considered a waiver

45

of the Debtor's, the Liquidating Trust's or the Responsible Person's right to pursue the Causes of Action.

### D.    Liquidation Under Chapter 7 – Liquidation Analysis

If the Plan is not confirmed, the Chapter 11 Case will likely be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the assets of the Debtor for Distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that any such conversion would reduce any Distribution to holders of Claims, especially claims of General Unsecured Creditors in Class 1-A and the Founders' Claims in Class 1-B, based upon, among other things, the (i) increased costs of a chapter 7 case arising from the fees payable to a chapter 7 trustee and professional advisors to such trustee; and (ii) substantially longer period of time that would elapse until distributions could be made under chapter 7.

### E.    Certain U.S. Federal Income Tax Consequences

The following is a summary of certain U.S. federal income tax consequences of the Plan to the Debtor and certain holders of Claims. This summary is based on the Internal Revenue Code, Treasury Regulations thereunder and administrative and judicial interpretations and practice, all as in effect on the date of the Disclosure Statement and all of which are subject to change, with possible retroactive effect. Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below. No opinion of counsel has been obtained and the Debtor does not intend to seek a ruling from the Internal Revenue Services as to any of the tax consequences of the Plan discussed below. There can be no assurance that the Internal Revenue Service will not challenge one or more of the tax consequences of the Plan described below.

This summary does not apply to holders of Claims that are not U.S. Persons (as such term is defined in the Internal Revenue Code) or that are otherwise subject to special treatment under U.S. federal income tax law (including, without limitation, banks, governmental authorities or agencies, financial institutions, insurance companies, pass-through entities, tax-exempt organizations, brokers and dealers in securities, mutual funds, small business investment companies and regulated investment companies). The following discussion assumes that holders of Allowed Claims and such Claims as "capital assets" within the meaning of section 1221 of the Internal Revenue Code. Moreover, this summary does not purport to cover all aspects of U.S. federal income taxation that may apply to the Debtor and holders of Allowed Claims based upon their particular circumstances. Additionally, this summary does not discuss any tax consequences that may arise under any laws other than U.S. federal income tax law, including under state, local or foreign tax law.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS

FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

**INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE**:  TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE.  TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE DISCLOSURE STATEMENT. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

F.      **Federal Income Tax Consequences to the Debtor**

The Debtor has filed consolidated federal income tax returns with the IRS and consolidated state income tax returns with all applicable states for all tax years up to and including the tax year ending 2022.  The Debtor does not expect to incur any substantial tax liability as a result of implementation of the Plan.

G.      **Federal Income Tax Consequences to Holders of General Unsecured Claims**

THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR.  FURTHER, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.

H.      **Federal Income Tax Treatment of Equity Interests**

THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER OF A DEFICIENCY CLAIM AND EQUITY INTEREST OF THE DEBTOR.  FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  THEREFORE, IT IS IMPORTANT THAT EACH HOLDER OF A DEFICIENCY CLAIM AND EQUITY INTEREST OF THE DEBTOR OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER OF A DEFICIENCY CLAIM AND EQUITY INTEREST OF THE DEBTOR AS A RESULT OF THE PLAN.

I.      **Withholding and Reporting**

Payment of interest, dividends, and certain other payments are generally subject to federal backup withholding at the rate of 28% unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor.  The Responsible Person may be required to withhold the applicable percentage of

47

any payments made to a holder who does not provide his taxpayer identification number.  Backup withholding is not an additional tax, but an advance payment of tax that may be refunded by the Internal Revenue Service to the extent such withholding results in an overpayment of tax by the taxpayer.

THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR EQUITY INTEREST.  ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

## ARTICLE XV

## GLOSSARY OF DEFINED TERMS

Unless the context otherwise requires, the following terms shall have the meanings set forth in this Article XV.  To the extent of any contradiction between these defined terms and those set forth in the Plan, those set forth in the Plan shall control.

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees for legal, financial advisory, accounting and other professional services and reimbursement of expenses of such Professionals that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, or otherwise rendered prior to the Effective Date, in connection with (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order by all Professionals in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (c) applications for allowance of Administrative Claims arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code.  To the extent the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses or any such Professional voluntarily waives or reduces its fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.      "*Administrative Claims*" means Claims for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses incurred on and after the Petition Date and before the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises).  Notwithstanding the foregoing, (i) any fees or charges assessed against the Estate of the Debtor under section 1930 of Chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claims and shall be paid in accordance with the

48

Plan, and (ii) Accrued Professional Compensation is excluded from the definition of Administrative Claims and shall be paid in accordance with the Plan.

3.        "*Administrative Claims Bar Date*" means the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated herein.

4.        "*Alleged Secured Claim*" means any Claim which attempts to assert a security interest in any property of the Debtor's Estate.

5.        "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided by a Final Order of the Bankruptcy Court: (a) a Claim or Equity Interest that has been scheduled by the Debtor in its schedules of liabilities that has been Filed by the Claims Objection Bar Date; (b) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (c) a Claim or Equity Interest that has been reviewed and deemed allowed by the Responsible Person; (d) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court by a Final Order or (ii) in any stipulation with the Debtor or amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; (e) a Claim or Equity Interest that is deemed allowed pursuant to the terms hereof or Allowed in the Confirmation Order; or (f) a Disputed Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

6.        "*Assets*" means all assets of the Debtor as of the Effective Date, including, but not limited to, all rights for payments or proceeds owed by Global Widget under the terms of the Sale Order, Cash of the Estate, Causes of Action, Books and Records and Privileges, as well as the Wind-Down Amount; for the avoidance of doubt, the Assets include any of the Debtor's rights to tax refunds and any rights related to the Debtor's employee retention tax credits.

7.        "*Ballot*" means the form of ballot, approved by the Disclosure Statement Order, used to record votes in favor of or opposed to the Plan.

8.        "*Bankruptcy Code*" means section 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as in effect as of the Petition Date.

9.        "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida.

10.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 23 of the United States Code, the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

11.        "*Bar Date Notice*" means the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 20].

12.    "*Books and Records*" means all books and records of the Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

13.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.    "*Carve-Out*" means the cash set aside under the terms of the Final Financing Order that is not subject to liens or priority Claims and is designated to pay the Professionals Fees and the U.S. Trustee Fees.

15.    "*Cash*" means cash and cash equivalents, including, but not limited to bank deposits, liquid investments, checks and similar items.

16.    "*Causes of Action*" means claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, defenses, rights of setoff, recoupment, subrogation, contribution, reimbursement or indemnity, counterclaims and crossclaims against any other Person, based in law and/or equity, whether under the Bankruptcy Code or other applicable law, whether direct, indirect, derivative or otherwise, whether known, suspected or unsuspected and whether asserted or unasserted as of the Effective Date.  For the avoidance of any doubt, "Causes of Action" includes, without limitation all claims arising under or authorized by 11 U.S.C. §§ 509, 510, 542 through 546, and 548 through 553, including applicable state law claims, or other actions against insiders and/or any other entities under the Bankruptcy Code. The Schedules set forth a list of transfers of property made by the Debtor before the Petition Date, and the recipients of such transfers should be aware that they may be liable for an avoidance, recover, fraudulent transfer, etc. as defined under the Bankruptcy Code. However, the mere fact that a party is not listed in the Schedules, the Plan or the Disclosure Statement does not mean that the Debtor does not hold a Cause of Action against that party.  The term Causes of Action shall not include those Causes of Action previously sold, released, or waived under the terms of the Sale Order, any other order of the Bankruptcy Court, and any releases executed by the Debtor between the Petition Date and the Effective Date.

17.    "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date, which is proceeding as case no. 23-11738-SMG.

18.    "*Claim*" means a "claim," as that term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

19.    "*Claims Objection Bar Date*" means the deadline for objecting to Claims, which shall be the 90th day following the Effective Date; provided, however, that the Debtor or the Responsible Person upon notice and motion may seek extensions of this date from the Bankruptcy Court.

20.    "*Class*" means a category of Claims or Equity Interests as set forth herein pursuant to section 1122(a) of the Bankruptcy Code.

21.    "*Confirmation Date*" means the date on which the Confirmation Order is entered

by the Bankruptcy Court.

22.      "*Confirmation Hearing*" means the hearing before the Bankruptcy Court during which the Debtor will seek confirmation of the Plan.

23.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24.      "*Creditor*" means a "creditor" as that term is defined in section 101(10) of the Bankruptcy Code.

25.      "*Debtor*" or "*Debtor in Possession*" means Green Roads, Inc.

26.      "*Disbursing Agent*" means the Responsible Person or his designee as more particularly described in Article V.

27.      "*Disclosure Statement*" means the Disclosure Statement for the Plan, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, as it is amended, supplemented or modified from time to time.

28.      "*Disclosure Statement Order*" means any order of the Bankruptcy Court approving the Disclosure Statement as having adequate information, including any such order that approves the Disclosure Statement on a conditional or non-final basis.

29.      "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim in a liquidated amount has been timely filed; (b) as to which the Debtor, the Responsible Person or other party has interposed a timely objection or request for estimation in accordance with this Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of this Plan, the Responsible Person shall have the power, up to and including the Claims Objection Bar Date, to determine a Claim to be Disputed upon review of the claims register and the Books and Records and may cause the amendment of the Schedules to reflect any such determination.

30.      "*Disputed Claims Reserve*" means amounts in a bank account or accounts reserved for Disputed Claims in accordance with the terms of Article VI.B of this Plan.

31.      "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

32.      "*Distributable Cash*" means the amount of Cash held by the Liquidating Trust after reasonable reserves the Responsible Person deems appropriate and after the payment of Administrative Claims, Priority Tax Claims, Other Priority Claims, and the necessary expenses of the Liquidating Trust so that such remaining Cash is available for Distributions to the holders of Allowed General Unsecured Claims in Class 1-A and Founders' Claims in Class 1-B.

33.    34.    "*Effective Date*" means the date that is the Business Day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect; and (b) all relevant conditions in Article VIII of the Plan have been satisfied or waived.

34.    "*Entity*" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

35.    "*Equity Interest*" means any "equity security" as that term is defined in section 101(16) of the Bankruptcy Code in the Debtor that existed immediately prior to the Petition Date.

36.    "*Estate*" means the estate of the Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

37.    "*Exculpated Parties*" means, collectively, (i) the Debtor's Professionals (including Dentons Bingham Greenebaum LLP, Dentons US LLP, ATB Capital Markets, Inc., KapilaMukamal LLP) (ii) Julie Pilch and Nikki Wisner, employees of the Debtor who remained employed by the Debtor after the Petition Date; and (iii) the Responsible Person.

38.    "*File*" or "*Filed*" means, with respect to any motion, pleading or other document, entered on the docket of the Chapter 11 Case.

39.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

40.    "*Final Financing Order*" means the *Final Order Granting Emergency Motion of the Debtor for Entry of an Order on an Interim and Then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief* [Docket No. 64] entered by the Bankruptcy Court on April 4, 2023.

41.    "*Final Order*" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing (excluding the times prescribed by Bankruptcy Rules 9023 and 9024), or request for a stay has expired.

42.    "*Founders' Claims*" means Claims against the Debtor that are not Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, or Equity Interests and which are held by the holders of equity interests in the Debtor or its predecessors who sold the business to SNDL pursuant to the *Plan of Merger and Securities Purchase Agreement By and Among Green Roads Founders LLC, the Members of Green Roads Founds LLC, Green Roads Holdings LLC, the Members of Green Roads Holdings LLC, Clarity Labs LLC, the Members of Clarity Labs, LLC, the Valens Company Inc., and VGR Merger Sub, Inc. Dated April 26, 2021.* For the avoidance of doubt, these claims include but are not limited to those claims asserted in the litigation pending as *Dale Baker et al. v. The Valens Company, Inc. et al.*, pending before the Superior Court of the State of Delaware.

43.    "*General Unsecured Claims*" means Claims against the Debtor that are not Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, or Equity Interests. Founders' Claims are included as General Unsecured Claims in Class 1-B,

whereas all other General Unsecured Claims are included in Class 1-A.

44.     "*Global Widget*" means Global Widget, LLC and any of its agents, affiliates or subsidiaries.

45.     "*Governmental Unit*" means a "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code.

46.     "*Impaired*" means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to any Class of Claims or Equity Interests.

47.     "*Initial Distribution Date*" means the date that is as soon as practicable after the Administrative Claims Bar Date, when Distributions under this Plan shall commence to holders of Allowed Claims.

48.     "*Interim Financing Order*" means the *Interim Order Granting Emergency Motion of the Debtor for Entry of an Order on an Interim and Then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief* [Docket No. 42] entered by the Bankruptcy Court on March 16, 2023.

49.     "*Lien*" means a "lien" as that term is defined in section 101(37) of the Bankruptcy Code, including, without limitation, a deed of trust, mortgage, charge, security interest, pledge, royalty, override, wheelage obligation, or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

50.     "*Liquidating Trust*" means the liquidating trust created pursuant to the Plan.

51.     "*Liquidating Trust Agreement*" means the liquidating trust agreement entered into pursuant to the terms of the Plan and attached to the Plan as **Exhibit B**, as amended from time to time.

52.     "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

53.     "*Person*" means a "person" as that term is defined in section 101(41) of the Bankruptcy Code, including, without limitation, any individual or Entity.

54.     "*Petition Date*" means March 6, 2023, the date on which the Debtor commenced the Chapter 11 Case.

55.     "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court, as the case may be.

56.     "*Plan Objection Deadline*" means the deadline for parties in interest in the Chapter 11 Case to object to the Plan as established by order of the Court.

57.    "*Plan Supplement*" means the supplement to the Plan containing certain documents and forms of documents specified in the Plan, if any, which documents and forms shall be filed prior to the hearing on confirmation of the Plan.

58.    "*Priority Tax Claims*" means Claims of Governmental Units accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

59.    "*Privileges*" means the right to assert or waive any privilege, including, but not limited to, any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written, electronic or oral), and control over or rights to direct current or former agents, attorneys, advisors and other professionals of the Debtor with respect thereto.  Such Privileges shall vest in the Responsible Person on the Effective Date.

60.    "*Professional*" means any Person employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

61.    "*Proof of Claim*" means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

62.    "*Pro Rata*" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class. Such ratios shall be calculated as if all Claims in the particular Class asserted against the Debtor are Allowed Claims as of the Effective Date, unless specifically provided otherwise in the Plan.

63.    "*Record Date*" means the date that is seven days before the Confirmation Hearing.

64.    "*Representatives*" means, with regard to a Person (including the Debtor), any current or former officers, directors, employees, advisors, attorneys, professionals (including Professionals), accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

65.    "*Responsible Person*" means Soneet R. Kapila in his capacity as fiduciary responsible for administering the Estate in accordance with the Plan, and any successor.

66.    "*Sale*" means the sale, approved by the Bankruptcy Court pursuant to the Sale Order, of substantially all of the Debtor's assets.

67.    "*Sale Order*" means the *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* [Docket No. 93] entered by the Bankruptcy Court on May 18, 2023, as may be amended by further Bankruptcy Court order.

68.    "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of

executory contracts and statements of financial affairs pursuant to section 521 of the Bankruptcy Code Filed by the Debtor on March 27, 2023, and as may be amended or modified from time to time.

69.    "*Solicitation Procedures*" means the solicitation procedures set forth in Article XII of the Disclosure Statement.

70.    "*SNDL*" means SNDL, Inc., a Canadian corporation and any of its agents, affiliates or subsidiaries, including The Valens Company Inc., a Canadian corporation.

71.    "*Subsequent Bar Date*" means the deadline for any parties who have been added to the Subsequent Notice List to file with a request with the Bankruptcy Court for payment of such Claim.

72.    "*Subsequent Distribution Date*" means any date that a Distribution not made on the Initial Distribution Date is made.

73.    "*Subsequent Notice List*" means the list of interested parties who may not have received notice of this chapter 11 proceeding, but who are now receiving such notice. A list of parties comprising the Subsequent Notice List is set forth in **Exhibit C**.

74.    "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in Region 21, including the Southern District of Florida.

75.    "*Voting Deadline*" means the deadline to vote to accept or reject the Plan.

76.    "*Voting Record Date*" the date on which holders of Claims that are entitled to vote to accept or reject the Plan will be determined

77.    "*Wind-Down Amount*" means cash transferred into the Liquidating Trust by the Debtor following the Debtor's reservation for, or payment of, all administrative and priority claims incurred prior to the Effective Date.

## ARTICLE XVI

## CONCLUSIONS AND RECOMMENDATION

The Debtor believes the Plan is in the best interests of all holders of Allowed Claims and urges all holders of Claims entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so that they will be received by the Voting Agent by the Voting Deadline.