# EXHIBIT A

**THE PLAN**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

GREEN ROADS, INC.,[1]                          Chapter 11

                         Case No. 23-11738-SMG

           Debtor.

_____/

## CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY GREEN ROADS, INC.

Dated: April 23, 2024                  Respectfully submitted,

/s/ James R. Irving
James R. Irving (admitted pro hac vice)
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky 40202
Telephone:  (502) 587-3606
E-mail:  james.irving@dentons.com

 -and-

Jonathan Kaskel (FBN 52718)
DENTONS US LLP
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone:  (305) 537-0009
E-mail:  jonathan.kaskel@dentons.com

 -and-

Andrew C. Helman (admitted pro hac vice)
DENTONS BINGHAM GREENEBAUM LLP
254 Commercial Street, Suite 245
Merrill's Wharf
Portland, Maine 04101
E-mail:  andrew.helman@dentons.com

*Counsel to Green Roads, Inc.*

---

[1]      The last four digits of the Debtor's federal tax identification number is 0208.

## <u>TABLE OF CONTENTS</u>

**Page**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ............................ 1

    A.    Defined Terms ............................................................................................... 1

    B.    Rules of Interpretation .................................................................................. 1

    C.    Exhibits ........................................................................................................ 1

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ................................... 2

    A.    Administrative Claims Bar Dates ................................................................. 2

    B.    Accrued Professional Compensation ........................................................... 2

    C.    Payment of Allowed Administrative Claims and Allowed Claims for
        Accrued Professional Compensation ........................................................... 3

    D.    United States Trustee Fees ............................................................................ 3

    E.    Priority Claims ............................................................................................. 3

    F.    Alleged Secured Claims ............................................................................... 4

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
EQUITY INTERESTS** ............................................................................................. 4

    A.    Summary ....................................................................................................... 4

    B.    Classification and Treatment of Claims and Equity Interests ...................... 5

    C.    Nonconsensual Confirmation ....................................................................... 6

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ......................... 6

    A.    Vesting of Assets .......................................................................................... 6

    B.    The Liquidating Trust ................................................................................... 7

    C.    Responsible Person to Effectuate Distributions ........................................... 7

    D.    Corporate Authority ..................................................................................... 8

    E.    Retention of Professionals ............................................................................ 8

    F.    Compensation of the Responsible Person .................................................... 8

    G.    Costs and Expenses of the Responsible Person ........................................... 9

    H.    Liability........................................................................................................ 9

    I.    Liquidation of the Debtor ............................................................................. 9

    J.    Books and Records ....................................................................................... 9

    K.    Operations of the Debtor Between the Confirmation Date and the
        Effective Date ............................................................................................ 10

    L.    Term of Injunctions or Stays....................................................................... 10

-i-

# TABLE OF CONTENTS
(continued)

Page

**ARTICLE V PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS**................. **10**

    A.    Voting of Claims.................................................................................. 10

    B.    Distribution Dates .............................................................................. 10

    C.    Disbursing Agent ............................................................................... 10

    D.    Record Date for Distributions ........................................................... 11

    E.    Delivery of Distributions ................................................................... 11

    F.    Undeliverable and Unclaimed Distributions...................................... 11

    G.    Manner of Cash Payments Under the Plan ........................................ 12

    H.    Compliance with Tax Requirements................................................... 12

    I.    No Payments of Fractional Dollars.................................................... 12

    J.    Interest on Claims .............................................................................. 12

    K.    No Distribution in Excess of Allowed Amount of Claim................... 13

    L.    Setoff and Recoupment...................................................................... 13

    M.    Closing of the Chapter 11 Case ......................................................... 13

    N.    *De Minimis* Distributions; Charitable Donation ................................ 13

    O.    United States Trustee Fees................................................................. 13

    P.    No Distributions on Late-Filed Claims.............................................. 14

**ARTICLE VI DISPUTED CLAIMS**.............................................................................. **14**

    A.    No Distribution Pending Allowance .................................................. 14

    B.    Resolution of Disputed Claims; Reserves for Disputed Claims ......................... 14

    C.    Objection Deadline ............................................................................ 15

    D.    Estimation of Claims.......................................................................... 15

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................................................................... **15**

    A.    Rejection of Executory Contracts and Unexpired Leases................... 15

    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.......... 16

**ARTICLE VIII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .................. **16**

    A.    Conditions Precedent ......................................................................... 16

    B.    Waiver ................................................................................................ 16

**ARTICLE IX INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS**.......................................................................................... **17**

23172856.v6

## TABLE OF CONTENTS
(continued)

Page

A.    Compromise and Settlement ................................................................. 17

B.    Title to Assets; Discharge of Liability .................................................. 17

C.    Binding Effect ...................................................................................... 17

D.    Discharge of Claims ............................................................................. 17

E.    Discharge of the Debtor ....................................................................... 18

F.    Exculpation .......................................................................................... 18

G.    Limitations on Exculpation .................................................................. 19

H.    Preservation of Causes of Action ........................................................ 19

I.    Injunction ............................................................................................ 21

J.    Releases of Liens ................................................................................. 22

**ARTICLE X RETENTION OF JURISDICTION** ................................................. **22**

A.    Scope of Retained Jurisdiction ............................................................ 22

B.    Exclusive Jurisdiction ......................................................................... 24

**ARTICLE XI MISCELLANEOUS PROVISIONS** ............................................. **24**

A.    Modification of Plan ............................................................................ 24

B.    Revocation of Plan .............................................................................. 24

C.    Binding Effect ...................................................................................... 24

D.    Successors and Assigns ....................................................................... 25

E.    Governing Law .................................................................................... 25

F.    Reservation of Rights .......................................................................... 25

G.    Article 1146 Exemption ....................................................................... 25

H.    Section 1125(e) Good Faith Compliance ............................................. 25

I.    Further Assurances .............................................................................. 25

J.    Service of Documents .......................................................................... 26

K.    Filing of Additional Documents .......................................................... 26

L.    No Stay of Confirmation Order ........................................................... 26

M.    Survival of Carve-Outs ....................................................................... 26

N.    Exemption ........................................................................................... 26

O.    Substitution of the Liquidating Trust for the Debtor ........................... 27

P.    Survival of Previous Orders from the Bankruptcy Court ..................... 27

## CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY GREEN ROADS, INC.

Green Roads, Inc., the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, hereby proposes the following plan of liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Defined Terms**

All capitalized terms used herein and not otherwise defined in the Plan (including in **Exhibit A** hereto) have the meanings given to them in the Bankruptcy Code unless the context clearly requires otherwise.

**B.    Rules of Interpretation**

1.    For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or a particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**C.    Exhibits**

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtor by a written or electronic email request sent to the following address:

James R. Irving
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
james.irving@dentons.com

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

**A.    Administrative Claims Bar Dates**

1.    By the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 20], the Bankruptcy Court established May 15, 2023 as the deadline for all creditors to file a proof of claim except governmental units, though such deadline does not specifically pertain to Administrative Claims.

2.    Further, thirty days after the Effective Date shall be the Administrative Bar Date, the deadline for parties to submit a request for payment of *any* Administrative Claim, including, but not limited to Administrative Expense Claims incurred under section 503(b)(9) of the Bankruptcy Code.

3.    Additionally, thirty days after the Effective Date shall be the Subsequent Bar Date, the deadline for any parties who have been added to the Subsequent Notice List to submit a request for payment of any Claim to the Bankruptcy Court.

4.    Except as otherwise provided herein, on the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court and serve on the Responsible Person, any request for payment of an unpaid Administrative Claim incurred before the Administrative Claim Bar Date.  Requests for payment of an Administrative Claim must include, at a minimum: (i) the name of the holder of the Administrative Claim; (ii) the amount of the asserted Administrative Claim; (iii) the basis of the Administrative Claim; (iv) when the Administrative Claim was incurred; and (v) all supporting documentation for the Administrative Claim.

5.    Any request for payment of an Administrative Claim will be timely Filed only if it is filed with the Bankruptcy Court by the Administrative Claim Bar Date.

6.    Notwithstanding anything herein, the Debtor's Professionals shall not be required to file a request for payment of Accrued Professional Compensation on or before the Administrative Claims Bar Date.  Such Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules, Confirmation Order and Plan as set forth in Article II Section B of this Plan.

**B.    Accrued Professional Compensation**

The deadline for submission by Professionals for Bankruptcy Court approval of Accrued Professional Compensation shall be the 30th day following the Effective Date.

**C.      Payment of Allowed Administrative Claims and Allowed Claims for Accrued Professional Compensation**

The Responsible Person shall direct the Liquidating Trust to pay each holder of a timely filed, Allowed Administrative Claim and Allowed Claim for Accrued Professional Compensation the full unpaid amount of such Allowed Administrative Claim or Allowed Claim for Accrued Professional Compensation in Cash: (1) on the Effective Date or as soon as practicable thereafter if such Administrative Claim is an Allowed Administrative Claim as of the Effective Date; (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (3) at such time and upon such terms as may be agreed upon by such holder and the Responsible Person; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

**D.      United States Trustee Fees**

All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date of this Plan.  Following Confirmation, the Post-Confirmation Debtor's obligation to pay United States Trustee fees shall continue until the Bankruptcy Case is converted, dismissed, or closed, whichever occurs first, and said fees will be paid in the ordinary course as they are incurred by the Debtor.

**E.      Priority Claims**

      1.      Priority Tax Claims

Priority Tax Claims are not classified under the Plan.  Except to the extent that the holder of an Allowed Priority Tax Claim agrees otherwise, each holder of an Allowed Priority Tax Claim shall ultimately receive in respect of such Allowed Claim the full amount of the Allowed Priority Tax Claim in Cash.  The Responsible Person will direct the Liquidating Trust to make distributions to the holders of Allowed Priority Tax Claims on the later of: (a) the Effective Date; or (b) the date on which such Priority Tax Claim becomes an Allowed Claim.  To be clear, the order of payment of all Priority Tax Claims and Other Priority Claims will be consistent with the priority scheme established in section 507 of the Bankruptcy Code.  In any event, the Liquidating Trust shall make distributions to satisfy the Allowed Priority Tax Claims not later than five (5) years after the Petition Date in compliance with section 1129(a)(9)(C).  Unless otherwise provided by an order of the Bankruptcy Court, no fees, interest or penalties of any kind shall be paid to the holders of Allowed Priority Tax Claims.

      2.      Other Priority Claims

The Responsible Person shall pay each holder of an Allowed Other Priority Claim the full unpaid amount of such Allowed Other Priority Claim in Cash.  The Responsible Person will direct the Liquidating Trust to make distributions to the holders of Allowed Other Priority Claims on the later of: (a) the Effective Date; or (b) the date on which such Other Priority Claim becomes an Allowed Claim.  To be clear, the order of payment of all Priority Tax Claims and Other Priority Claims will be consistent with the priority scheme established in section 507 of the Bankruptcy Code.  In any event, the Liquidating Trust shall make distributions to satisfy the Allowed Other Priority Claims not later than five years after the Petition Date. Unless otherwise provided by an

order of the Bankruptcy Court, no fees, interest or penalties of any kind shall be paid to the holders of Allowed Other Priority Claims.

**F.      Alleged Secured Claims**

The Debtor does not believe that there are any Alleged Secured Claims. The Debtor and/or the Responsible Person plan to object to any Claim which asserts a security interest because, among other things, all of the assets in the Estate are free and clear of liens, claims and encumbrances following the Sale Order, other orders of this Bankruptcy Court, and other applicable law. Nevertheless, to the extent Allowed Claims are found to be secured, they will receive on account of such claim deferred Cash payments totaling at least the allowed amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estate's interest in such property.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.      Summary**

a.      In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims, Priority Tax Claims and Other Priority Claims, as described in Article II of the Plan.

b.      The following table classifies Claims against and Equity Interests in the Debtor for all purposes including voting, confirmation and Distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest asserted in that Class is Allowed and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

c.      Summary of Classification and Treatment of Classified Claims and Equity Interests:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1-A | General Unsecured Claims | Impaired | Entitled to Vote |
| 1-B | Founders' Claim | Impaired | Entitled to Vote |
| 2 | Equity Interests | Impaired | Deemed to Reject |

**B.    Classification and Treatment of Claims and Equity Interests**

    a.    General Unsecured Claims (Class 1-A)

        i.    **Classification**:    Class 1-A consists of the General Unsecured Claims.[2]

        ii.    **Treatment:**    Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtor prior to the Effective Date or agrees to alternative classification or treatment, each holder of an Allowed General Unsecured Claim shall receive their Pro Rata share of the Distributable Cash from the Liquidating Trust in full and final satisfaction, compromise, settlement and release of, and in exchange for, each Allowed General Unsecured Claim.  Distributions to holders of Allowed General Unsecured Claims shall be made as soon as practicable as the Responsible Person may determine.  For the avoidance of doubt, the amount of Distributions to holders of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be, in all respects, *pari passu*, with the funding coming from the same source, and the timing of Distributions to these Allowed Claims being simultaneous.  The treatment of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be equal in all respects under this Plan.

        iii.    **Voting:**  Class 1-A is Impaired and, therefore, holders of General Unsecured Claims (Class 1-A) are entitled to vote to accept or reject the Plan.

    b.    General Unsecured Claims (Class 1-B)

        i.    **Classification**:  Class 1-B consists of the Founders' Claims.[3]

        ii.    **Treatment:**  Except to the extent that a holder of an Allowed Founders' Claim has been paid by the Debtor prior to the Effective Date or agrees to alternative classification or treatment, each holder of a Founders' Claim shall receive their Pro Rata share of the

---

[2]     Unsecured Claims make up Classes 1-A and 1-B as secured claims do not exist due to the Sale Order.
[3]     Unsecured Claims make up Classes 1-A and 1-B as secured claims do not exist due to the Sale Order.

Distributable Cash from the Liquidating Trust in full and final satisfaction, compromise, settlement and release of, and in exchange for, each Founders' Claim.  Distributions to holders of Allowed Founders' Claims shall be made as soon as practicable as the Responsible Person may determine.  For the avoidance of doubt, the amount of Distributions to holders of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be, in all respects, *pari passu*, with the funding coming from the same source, and the timing of Distributions to these Allowed Claims being simultaneous.  The treatment of the Allowed Founders' Claims and Allowed General Unsecured Claims shall be equal in all respects under this Plan.

    iii.    **Voting:**  Class 1-B is Impaired and, therefore, holders of Founders' Claims (Class 1-B) are entitled to vote to accept or reject the Plan.

  c.    Equity Interests (Class 2)

    i.    **Classification:**  Class 2 consists of Equity Interests.

    ii.    **Treatment:**  Holders of Equity Interests in Class 2 shall receive no Distribution under the Plan.  Equity Interests shall be automatically canceled, released, and extinguished on the Effective Date.

    iii.    **Voting:**  Class 2 will receive no Distribution under the Plan and, therefore, under section 1126(g) of the Bankruptcy Code, holders of Equity Interests (Class 2) are deemed to reject the Plan.

**C.    Nonconsensual Confirmation**

The Debtor intends to request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by the holders of Equity Interests in Class 2.  If holders of Claims in Classes 1-A or 1-B do not vote to accept the Plan by the requisite statutory majority provided in section 1126 of the Bankruptcy Code, the Debtor reserves the right to amend the Plan as well as request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**ARTICLE IV**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.    Vesting of Assets**

Except as otherwise provided in the Plan or Liquidating Trust Agreement, on the Effective Date, the Assets shall vest in and with the Liquidating Trust free and clear of all Liens, Claims, or other encumbrances because such Assets were transferred to, or received by, the Debtor free and clear of all Liens and Claims pursuant to the Sale Order.  For the avoidance of doubt, the transfer of the Assets to the Liquidating Trust shall be exempt from any stamp, other transfer, sales, use or

other similar tax.  Further, after the Effective Date, the Debtor shall have no interest in the Liquidating Trust Assets and the transfer of the Assets to the Liquidating Trust is absolute and irrevocable.

**B.**      **The Liquidating Trust**

On the Effective Date, the Debtor, on its own behalf and on behalf of the beneficiaries, and the Responsible Person, shall execute the Liquidating Trust Agreement, a copy of which is attached as **Exhibit B** hereto, and all other necessary steps shall be taken to establish the Liquidating Trust.  Also on the Effective Date, all of the Debtor's Assets shall vest in the Liquidating Trust, including, but not limited to the Wind-Down Amount, the right to any of the Debtor's deposits, the Debtor's other Cash and the Causes of Action.  The Liquidating Trust shall be established for the sole purposes of adjudicating Claims, liquidating any remaining assets—if any—and distributing the Assets for the benefit of the beneficiaries of the Liquidating Trust, with no objective to continue or engage in the conduct of a trade or business.  The Liquidating Trust shall be deemed to be a party in interest for purposes of contesting, settling or compromising objections to Claims and Causes of Action.  The Liquidating Trust shall be vested with all the powers and authority set forth in the Plan and the Liquidating Trust Agreement.  The Responsible Person shall be responsible for: administering the Liquidating Trust; reconciling and objecting to Claims; prosecuting, defending or otherwise resolving appeals of any orders entered by the Bankruptcy Court; pursuing Causes of Action; making distributions to holders of Allowed Claims; ensuring compliance with the orders of the Bankruptcy Court including the Sale Order; and taking such other action as is otherwise necessary to implement the terms of this Plan.

**C.**      **Responsible Person to Effectuate Distributions**

The Responsible Person shall be deemed to have been appointed as the Estate's and the Liquidating Trust's representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Responsible Person shall be entitled to retain counsel and other professionals to carry out his duties.  The Responsible Person shall not be required to post a bond.

The Responsible Person shall be appointed for the sole purpose of liquidating and distributing the remaining Assets which have been transferred to the Liquidating Trust, with no objective to continue or engage in the conduct of a trade or business.  To the extent that the Responsible Person determines that it would generate Cash for the Liquidating Trust, the Responsible Person shall have the authority to pursue and settle the Causes of Action.  The Responsible Person, in his sole discretion, may settle Causes of Action if such amount does not exceed $30,000.  If such amount exceeds $30,000, the Responsible Person shall file a notice in the Chapter 11 Case providing parties in interest fourteen days' notice of the proposed settlement, so that if an objection is timely filed there will be a hearing to consider the reasonableness of the settlement under the standards applied under Bankruptcy Rule 9019 and if no objection is timely filed the settlement will be deemed approved.  In accordance with this Plan, the Responsible Person shall (i) pay to each holder of an Allowed Administrative Claim, Allowed Priority Tax Claim and Allowed Other Priority Claim, the full unpaid amount of each such Allowed Claim according to the terms of this Plan (or such other amount agreed to by any of the foregoing parties); and (ii) make Distributions of the remaining Assets, in Cash, to the holders of Allowed General Unsecured

Claims in Class 1-A and 1-B subject to the treatment of the claims put forth in Article III.B of the Plan.

### D.    Corporate Authority

All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need for further approvals, notices, or meetings of the Debtor's board of directors, board of managers, or Equity Interest holders, other than the notice provided by serving the Plan or notices of the entry of the Confirmation Order and of the Effective Date of the Plan on (i) all known holders of Claims and (ii) all current directors or managers of the Debtor.  The Confirmation Order shall include provisions dispensing with the need for further approvals, notices, meetings, or votes of Equity Interest holders and authorizing and directing any officer of the Debtor to execute any document, certificate, or agreement necessary to effectuate the Plan on behalf of the Debtor, which documents, certificates, and agreements shall be binding on the Debtor, the Creditors, and all Equity Interest holders.  Subject to compliance with the Liquidation Trust Agreement, from and after the Effective Date, the Responsible Person is vested with authority to take any action contemplated by this Plan on behalf of the Debtor and Liquidating Trust that would otherwise require the approval of members, board of directors, board of managers, managers, or officers of the Debtor or Liquidating Trust.  From and after the Effective Date, the authority, power and incumbency of the persons then acting as directors, managers, and/or officers of the Debtor shall be terminated and such directors, managers, and/or officers shall be deemed to have resigned or to have been removed without cause and have no further duties or responsibilities with respect to the Debtor.

### E.    Retention of Professionals

The Responsible Person may retain and compensate attorneys and other professionals to assist in his duties as Responsible Person on such terms (including on a contingency or hourly basis) as the Responsible Person deems reasonable and appropriate without Bankruptcy Court approval.  The payment of the reasonable fees and expenses of the Responsible Person's retained professionals shall be made in the ordinary course of business from the Assets and shall not be subject to the approval of the Bankruptcy Court.  Professionals of the Debtor shall be eligible for retention by the Responsible Person.

### F.    Compensation of the Responsible Person

The Responsible Person shall be entitled to reasonable compensation in the amount of $820 per hour of his recorded time, plus expense reimbursements as set forth in the Plan.  This hourly rate is subject adjustment annually beginning on January 1, 2025.  The Responsible Person is likely to engage other professionals, including those at his firm, with lower hourly rates than his own.

Notwithstanding, the Responsible Person owes fiduciary duties to the Debtor's Estate and the Liquidating Trust beneficiaries to maximize recoveries for the Debtor's creditors and the Liquidating Trust's beneficiaries.  Thus, the Responsible Person is limited by said fiduciary duties in the payment of any compensation under this section and costs and expenses in Section IV.G., below.

### G.   Costs and Expenses of the Responsible Person

The costs and expenses of the Responsible Person, including the reasonable and documented fees and expenses of the Responsible Person and each of his retained professionals and contractors, shall be paid out of the Assets prior to Distribution to holders of Classes 1-A and 1-B.

### H.   Liability

Neither the Responsible Person nor his professionals or contractors shall be liable for any act or omission taken or omitted to be taken other than acts or omissions resulting from the Responsible Person's, his professional's or his contractor's willful misconduct, gross negligence, or fraud.  The Responsible Person, his professionals and contractors may, in connection with the performance of their duties or functions, and in their sole absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Responsible Person, his professionals or his contractors.  Notwithstanding such authority, the Responsible Person, his professionals and his contractors shall be under no obligation to consult with attorneys, accountants, or their agents, and their determination to not do so should not result in imposition of liability on the Responsible Person, his professionals or contractors unless such determination is based on willful misconduct, gross negligence, or fraud.

Any claim asserted against the Responsible Person or his professionals or contractors must be brought in the Bankruptcy Court.

### I.   Liquidation of the Debtor

After the Effective Date, the Responsible Person shall: (a) file a certificate of dissolution, together with all other necessary corporate documents, to effect the dissolution of the Debtor under the applicable laws of the State of its formation; and (b) complete and file the Debtor's final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of the Chapter 11 Case or through the date of such dissolution, as determined under applicable tax laws.  The filing of the Debtor's certificate of dissolution shall be authorized and approved in all respects without further action by the members, managers, or officers of the Debtor; provided, however, in no event shall the Debtor be dissolved later than three years following the Effective Date absent further order of the Bankruptcy Court.

### J.   Books and Records

To the extent that the Debtor has any Books and Records as of the Effective Date, the Debtor shall transfer dominion and control over those Books and Records to the Responsible Person.  The Responsible Person may abandon any of the Books and Records, that in his sole business judgment but subject to Court approval, neither he nor the Liquidating Trust need, and neither the Responsible Person nor the Liquidating Trust shall be responsible for maintaining any records.  Pursuant to section 554 of the Bankruptcy Code, the relevant articles and sections of the Plan shall constitute motion and notice, so that no further notice or Bankruptcy Court filings are

required to effectuate the aforementioned abandonment of the Books and Records and entry of the Confirmation Order shall be deemed approval thereof.

To the extent that Global Widget owes an obligation to cooperate or provide books and records to the Debtor related to the Assets which were part of the Sale, then that obligation shall now run to, and for the benefit of, the Responsible Person and Liquidating Trust.

**K.      Operations of the Debtor Between the Confirmation Date and the Effective Date**

The Debtor shall continue to operate as debtor in possession during the period from the Confirmation Date through and until the Effective Date.

**L.      Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.

**ARTICLE V**

**PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS**

**A.      Voting of Claims**

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to Article III of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan or other order or orders of the Bankruptcy Court.

**B.      Distribution Dates**

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**C.      Disbursing Agent**

All distributions under the Plan by the Responsible Person shall be made by the Responsible Person as Disbursing Agent or such other entity designated by the Responsible Person as Disbursing Agent.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform his duties under the Plan, (b) make all Distributions contemplated by the Plan, (c) employ professionals to represent him with respect to his responsibilities, and (d) exercise such other powers as may be vested in the

Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and shall have no (x) liability for actions taken in accordance with the Plan or in reliance upon information provided to him in accordance with the Plan or (y) obligation or liability for Distributions under the Plan to any party who does not hold an Allowed Claim at the time of Distribution or who does not otherwise comply with the terms of the Plan.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Responsible Person acting as the Disbursing Agent (including, without limitation, reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash from the Assets in the ordinary course of business and without need for an order of the Bankruptcy Court.

## D. Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any periods provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Responsible Person shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making any Distribution with respect to any Claim, the Responsible Person shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtor as of the Record Date and is available to the Responsible Person.

## E. Delivery of Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Disbursing Agent at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim filed by such holder or (b) the last known address of such holder if no Proof of Claim is filed or if the Reorganized Debtor has not been notified in writing of a change of address.

## F. Undeliverable and Unclaimed Distributions

In the event that any Distribution to any holder of an Allowed Claim made by the Disbursing Agent is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder; provided, however, that all Distributions to holders of Allowed Claims made by the Disbursing Agent that are unclaimed for a period of 120 days after Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Liquidating Trust and any entitlement of any holder of any Claims to such further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement

of any holder of such Claim to any such Distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim may receive future Distributions on account of such Claim by contacting the Responsible Person at some point prior to the final Distribution. Further, undeliverable and/or unclaimed Distributions to the extent they are revested in the Liquidating Trust shall automatically and immediately become Distributable Cash.

**G.      Manner of Cash Payments Under the Plan**

Except as otherwise provided herein, Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Responsible Person.

**H.      Compliance with Tax Requirements**

In connection with this Plan and all instruments issued in connection herewith and Distributions hereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  As a condition to receiving any Distributions, all holders of General Unsecured Claims are required to provide any information necessary to effect information reporting and the withholding of such taxes on Form W-8 or W-9 ("Tax Information") within 30 days of a request by the Responsible Person and prior to receiving a Distribution.  Failure to comply will result in the Claimant's distribution being treated as undeliverable or unclaimed and forfeited.  If the requisite forms are not returned by the date of the Final Distribution, the Claim shall be forever barred.  The Liquidating Trust shall not be liable for, and the Responsible Person or his Disbursing Agent shall not be required to make, a Distribution prior to receiving the Tax Information.

Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**I.      No Payments of Fractional Dollars**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

**J.      Interest on Claims**

Except as specifically provided in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Claim that is a Disputed Claim in respect of the period from the Effective Date to the date an interim or final Distribution

is made thereon if and after the Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

**K.    No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

**L.    Setoff and Recoupment**

The Responsible Person may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtor or its Estate may have against the holder of such Claim but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, the Responsible Person or the Liquidating Trust of any right of setoff or recoupment that any of them may have against the holder of any Claim.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.  Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; provided, however, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtor and its Estate, the Responsible Person and the Liquidating Trust with respect thereto are reserved.

**M.    Closing of the Chapter 11 Case**

The Responsible Person shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Case.

**N.    *De Minimis* Distributions; Charitable Donation**

Notwithstanding anything to the contrary therein, the Responsible Person shall not be required to make a Distribution to any holder of an Allowed Claim if the dollar amount of the Distribution is less than $50 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  On or about the time that the final Distribution is made, the Responsible Person may make a charitable donation with undistributed funds if, in the reasonable judgment of the Responsible Person, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the holders of Claims who would otherwise be entitled to such Distributions.  Such charitable donation may be to the American Bankruptcy Institute Foundation, if the Responsible Person so chooses.

**O.    United States Trustee Fees**

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code shall be paid by the Responsible Person using the Assets.  The Responsible Person shall be responsible for

Filing quarterly reports for the Liquidating Trust in a form reasonably acceptable to the U.S. Trustee.

**P.      No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim or other request was required to be Filed or submitted and was first Filed or submitted after the applicable bar date in the Chapter 11 Case, including, without limitation, the deadlines established herein, or in the Bar Date Notice, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without need for (a) any further action by the Responsible Person or the Liquidating Trust or (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

# ARTICLE VI

## DISPUTED CLAIMS

**A.      No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, the Responsible Person shall not make any Distribution on account of any Disputed Claim unless and until such Claim becomes Allowed.

**B.      Resolution of Disputed Claims; Reserves for Disputed Claims**

The Responsible Person shall have the right to make and file objections to Claims in the Bankruptcy Court on behalf of the Liquidating Trust.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.  After the Effective Date, the Liquidating Trust shall be the successor in interest to any objections to Claims filed by the Debtor before the Effective Date, and the Responsible Person shall be responsible for prosecuting and/or settling those objections.  Should a claimant elect to compromise, settle or otherwise resolve any objections asserted by the Responsible Person, the Responsible Person may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.  The Responsible Person, in his sole discretion, may settle Causes of Action if such amount does not exceed $30,000.  If such amount exceeds $30,000, the Responsible Person shall file a notice in the Chapter 11 Case providing parties in interest fourteen days' notice of the proposed settlement, so that if an objection is timely filed there will be a hearing to consider the reasonableness of the settlement under the standards applied under Bankruptcy Rule 9019 and if no objection is timely filed the settlement will be deemed approved.

In connection with any Distributions to holders of Allowed Claims, the Responsible Person shall set aside one or more Disputed Claims Reserves in an amount that the Responsible Person determines would likely have been distributed to the holder of Disputed Claims.  In each instance, the Responsible Person should establish the amount to be reserved on account of a Disputed Claim by determining the amount of Distributable Cash equal to the Distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of: (a) the amount of the Disputed Claim; (b) the amount in which the Disputed Claim shall

be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance or distribution, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim; or (c) such other amount as may be agreed upon by the holder of such Disputed Claim and the Responsible Person.

**C.    Objection Deadline**

All objections to Disputed Claims shall be Filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court.

**D.    Estimation of Claims**

At any time, the Responsible Person may request that the Bankruptcy Court estimate any Disputed Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Responsible Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or the Responsible Person may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Rejection of Executory Contracts and Unexpired Leases**

The Plan shall constitute a motion to reject all executory contracts and unexpired leases not previously rejected or assumed and assigned pursuant to an order of the Bankruptcy Court, and the Estate and the Liquidating Trust shall have no further liability thereunder.  The entry of the Confirmation order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interests of the Debtor, the Estate and all parties in the Chapter 11 Case.  Said rejected executory contracts and unexpired leases shall also be deemed terminated upon rejection. For the avoidance of doubt, the following agreements shall not be deemed to be rejected or terminated upon entry of the Confirmation Order: (a) any executory contract or unexpired lease previously assumed, assumed and assigned, or rejected by the Debtor; (b) any executory contract or unexpired lease previously expired or terminated pursuant to its own terms before the Petition Date; (c) any asset purchase agreement or ancillary agreement with Global Widget related to the Sale; (d) any executory contract or unexpired lease that is the subject of a pending motion to assume or reject

on the Confirmation Date; and (e) any rights or benefits under any insurance policy in which the Debtor is a beneficiary. The Debtor reserves the right to supplement the Plan with a schedule of additional agreements in a Plan supplement.

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this article of the Plan, or the termination of any executory contract or unexpired lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Responsible Person no later than 30 days after the entry of the Confirmation Order; provided, however, that this provision shall not be construed to enlarge or extend any claims bar date applicable to previously rejected contracts. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to this article of the Plan for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Estate, the Liquidating Trust and the Responsible Person, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in this article of the Plan. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of the Plan.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.      Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The Confirmation Order has become a Final Order;[4]

2.      There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the exculpations provided for herein;

3.      The appointment of the Responsible Person shall have been confirmed by entry of the Confirmation Order or other order of the Bankruptcy Court; and

4.      All United States Trustee Fees incurred before the entry of the Confirmation Order shall have been paid.

**B.      Waiver**

Notwithstanding the conditions in the Plan, the Debtor may decide to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions

---

[4] The Debtor may request that the Final Order become immediately final and not subject to the 14-day waiting period of Bankruptcy Rule 6004.

precedent. Any such written waiver of a condition precedent set forth in Article VIII of the Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

# ARTICLE IX

## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

**A.    Compromise and Settlement**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith settlement and compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement as fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

**B.    Title to Assets; Discharge of Liability**

Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Liquidating Trust free and clear of all Claims, Equity Interests, Liens, encumbrances, charges, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor arising prior to the Effective Date, except as may be otherwise provided in the Plan.

**C.    Binding Effect**

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor, the Liquidating Trust, and any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

**D.    Discharge of Claims**

Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims, of any kind, nature, or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided herein, upon the Effective Date, all existing Claims against the Debtor in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Liquidating Trust, its respective successors and assignees, or any of its respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity

interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Equity Interest in the Debtor.  Nothing in this Article IX.D should be interpreted as a discharge of the Debtor's or Liquidating Trust's rights or obligations under the Plan.

## E.    Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan will be in complete satisfaction, discharge, and release, of any and all Claims, whether known or unknown, against the Debtor or the Liquidating Trust or any of their assets or properties, regardless of whether the property has been distributed or retained pursuant to the Plan.  Without limiting the generality of the foregoing, the Debtor or the Liquidating Trust will be discharged from any and all Claims and debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim accepted the Plan.  Except as otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor arising before the Effective Date.  Under section 524 of the Bankruptcy Code, the discharge granted under this section shall avoid any judgment against the Debtor at any time obtained (to the extent it relates to a discharged Claim), and operates as an injunction against the prosecution of any action against the Debtor or the Estate (to the extent such action relates to a discharged claim).  Nothing in this Article IX.F should be interpreted as a discharge of the Debtor's or the Liquidating Trust's rights or obligations under the Plan.

## F.    Exculpation

**Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Claim, Cause of Action, remedy, loss, and liability for any act taken or act omitted to be taken or Claim arising after the Petition Date in connection with, arising out of, or related to: the Chapter 11 Case; the administration thereof; the negotiation, formulation, preparation, dissemination, implementation, administration, confirmation, consummation, and pursuit of the Final Financing Order, the Sale, the Disclosure Statement, the Plan, or the Liquidating Trust Agreement; the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or property to be distributed under the Plan; any agreements, instruments, or other documents or transactions related to any of the foregoing; or negotiations regarding or concerning any of the foregoing; but excepting acts or omissions determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud; provided, however, in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.**

**G.      Limitations on Exculpation**

Nothing in Article IX.F ("Exculpation") herein shall (i) be construed to release or exculpate any person from, or require indemnification of any Person against losses arising from, the fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or (ii) limit the liability of the professionals of the Debtor to its client pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

**H.      Preservation of Causes of Action**

1.      Vesting of Causes of Action

a.      Except as expressly assigned or released in the Plan or by prior Orders of the Bankruptcy Court, including the Sale Order, the Liquidating Trust shall reserve and retain, in accordance with section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, any and all of the Debtor's Causes of Action, including without limitation any actions for claims specifically listed on the Debtor's schedules whether or not listed as contingent or disputed. On and after the Effective Date, the Liquidating Trust is granted authority and standing, on behalf of the Debtor and the Estate, to investigate and initiate any Causes of Action granted to it pursuant to this Plan. The Causes of Action may include but are not limited to (i) any and all Causes of Action pursuant to or arising under applicable bankruptcy or non-bankruptcy law, including but not limited to claims arising in tort, contract, or non-bankruptcy statutes, or any applicable section of the Bankruptcy Code; (ii) objections to Claims; (iii) claims that the Estate is entitled to setoff or recoupment against Entities holding Claims against the Estate; and (iv) any other litigation or Causes of Action, whether legal, equitable, or statutory in nature, arising out of or in connection with the Debtor's business, assets, or operations, or otherwise affecting the Debtor, against any Entities or Representative. For the avoidance of doubt, the Liquidating Trust shall retain the right to object to Administrative and Priority Claims, and to raise any of the Debtor's affirmative defenses, including setoff and recoupment, regarding the same, and pursue all Causes of Action arising under sections 505, 544, 548, 549, 550, 551, 553, and 1123(b)(3)(B) of the Bankruptcy Code, to the extent necessary to recover amounts avoided under any of the foregoing sections of the Bankruptcy Code. Notwithstanding the retention of the foregoing Causes of Action, the Debtor waives any claims arising under section 547 of the Bankruptcy Code, and the Liquidating Trust shall not retain the right to pursue same. On behalf of the Debtor and its Estate, the Liquidating Trust reserves the rights to any Causes of Action that may be identified on or after the Effective Date. The recoveries, if any, from any litigation brought by the Liquidating Trust, will depend on many factors, which cannot be predicted at this time. The Liquidating Trust may elect not to pursue any Causes of Action the pursuit of which the Liquidating Trust

deems not to be in the best interest of the beneficiaries of the Liquidating Trust and the holders of Allowed General Unsecured Claims.

b.      The Responsible Person's right to commence and prosecute Causes of Action shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against them. No Entity shall be entitled to assert any defense to a Cause of Action based, in whole or in part, upon confirmation of the Plan, and no preclusion doctrine, including without limitation the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), and laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan. The foregoing shall be sufficient for all purposes to satisfy the requirements of the standard set forth in *Browning v. Levy,* 283 F.3d 761 (6th Cir. 2002) and *Nestlé Waters N. Am., Inc. v. Mt. Glacier LLC (In re Mt. Glacier LLC)*, 877 F.3d 246 (6th Cir. 2017).

c.      Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Responsible Person, on behalf of the Liquidating Trust, shall have the exclusive right, but not the obligation, to investigate, institute, prosecute, abandon, settle or compromise any Causes of Action, in his or her sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

2.      Preservation of All Causes of Action Not Expressly Settled or Released

a.      Unless a Cause of Action against any Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor and/or the Estate expressly reserve such Cause of Action for the Liquidating Trust and the Responsible Person and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or the Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in the Plan) or any other Final Order (including the Confirmation Order). In addition, the Debtor and the Estate expressly reserve the right of the Responsible Person, on behalf of the Liquidating Trust, to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an

interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

b.   Subject to the description in the immediately preceding paragraph and to any Final Order, any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from or to the Debtor should assume that any such obligation, transfer, or transaction may be reviewed by the Responsible Person subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Person filed a Proof of Claim against the Debtor in the Chapter 11 Case; (ii) the Debtor has objected to any such Person's proof of Claim; (iii) any such Person's Claim was included in the Schedules; (iv) the Debtor has objected to any such Person's scheduled Claim; or (v) any such Person's scheduled Claim has been identified by the Debtor as disputed, contingent or unliquidated.

3.   Settlement of Causes of Action.  The Responsible Person, in his sole discretion, may settle Causes of Action if such amount does not exceed $30,000.  If such amount exceeds $30,000, the Responsible Person shall file a notice in the Chapter 11 Case providing parties in interest fourteen days' notice of the proposed settlement, so that if an objection is timely filed there will be a hearing to consider the reasonableness of the settlement under the standards applied under Bankruptcy Rule 9019 and if no objection is timely filed the settlement will be deemed approved.

## I.   Injunction

1.   From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of their respective successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or exculpated or to be released or exculpated pursuant to the Plan or the Confirmation Order.

2.   Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of their respective successors and assigns, and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  For avoidance of doubt, such injunction does not preclude the pursuance of claims against third parties, and the terms "successors and assigns" does not include buyers of the Debtor's assets.

3.   The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, against the Debtor or any of its assets or properties.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtor shall be satisfied and released in full.

4. Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied, discharged, resolved, settled and/or released hereby, from:

      a.     Commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of their respective successors and assigns, and their assets and properties;

      b.     Enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of the respective successors and assigns, and their assets and properties;

      c.     Creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Estate, the Responsible Person, the Liquidating Trust, and each of their respective successors and assigns, and their assets and properties;

      d.     Asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or Estate of the Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed Proof of Claim; and

      e.     Commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim, Lien, Equity Interest or Cause of Action released or settled hereunder.

## J.     Releases of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, and to the extent not already released in the Sale Order, all Liens against property of the Estate shall be fully released and discharged as of the Effective Date.

## ARTICLE X

## RETENTION OF JURISDICTION

## A.     Scope of Retained Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Responsible Person, the Liquidating Trust and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.      Grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Case by the Debtor for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date, including, but not limited to, Accrued Professional Compensation;

3.      Resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.      Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Responsible Person after the Effective Date, provided, however, that the Debtor and the Estate and, following the Effective Date, the Responsible Person and the Liquidating Trust shall reserve the right of the Responsible Person to commence actions in all appropriate jurisdictions;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan;

7.      Enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtor or Liquidating Trust, as applicable, wherever located;

8.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.      Issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

10.     Enforce the exculpations set forth in Article IX of the Plan;

11.     Resolve any cases, controversies, suits or disputes with respect to the releases, injunction, and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.     Enforce orders entered by the Court in the Chapter 11 Case;

13.     Enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.     Resolve any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or documents adopted in connection with the Plan; and

15.     Enter an order and/or the Final Decree concluding the Chapter 11 Case.

**B.     Exclusive Jurisdiction**

The Bankruptcy Court shall have exclusive jurisdiction to determine whether a lawsuit, action or other activity relating to the Exculpated Parties is violative of the exculpations set forth herein.

**ARTICLE XI**

**MISCELLANEOUS PROVISIONS**

**A.     Modification of Plan**

Subject to the limitations contained in the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Court and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor or the Responsible Person may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency on the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  The Debtor also reserves the right to make immaterial modifications to the Plan prior to the Effective Date, including, but not limited to, formatting, grammar, etc.

**B.     Revocation of Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent chapter 11 plans; provided, however, that the filing of this Plan shall not be deemed a waiver of the Debtor's exclusivity under section 1121 of the Bankruptcy Code.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

**C.     Binding Effect**

On the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

## D.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## E.    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

## F.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.  Neither the filing of the Plan, any statement or provisions contained herein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the holders of Claims or Equity Interests or other parties in interest or (2) any holder of a Claim or other party in interest prior to the Effective Date.

## G.    Article 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

## H.    Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtor and each of its Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

## I.    Further Assurances

The Debtor, the Responsible Person, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, and as applicable, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

## J.    Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent electronically or by first-class U.S. mail, postage prepaid as follows:

To the Responsible Person & Liquidating Trust:

Soneet R. Kapila
KAPILAMUKAMAL LLP
1000 South Federal Highway, Ste. 200
Fort Lauderdale, Florida 33316
Telephone: (954) 761-1011
E-mail: skapila@kapilamukamal.com

To the Debtor:

James R. Irving
Jacob S. Margolies
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail:  james.irving@dentons.com
          jacob.margolies@dentons.com

## K.    Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## L.    No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e), 6004(h) and 7062.

## M.    Survival of Carve-Outs

Notwithstanding anything else in this Plan to the contrary, the Carve-Outs established under the Final Financing Order entered in the Chapter 11 Case shall survive to the extent that the Debtor's professional fees are not fully paid as of the Effective Date.

## N.    Exemption

**Under section 1145 of the Bankruptcy Code, the issuance of the beneficial interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Responsible Person determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of**

**the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Responsible Person shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.**

**O.      Substitution of the Liquidating Trust for the Debtor**

**On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtor in all pending matters including but not limited to (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, including any appeals, without the need or requirement for the Responsible Person to file motions or substitutions of parties and counsel.**

**P.      Survival of Previous Orders from the Bankruptcy Court**

Nothing in this Plan is intended to, or does, alter the terms of any other order entered by the Bankruptcy Court in this Chapter 11 Case, including, without limitation, the Interim Financing Order, the Final Financing Order, the Sale Order, the asset purchase agreements and other documents evidencing the sale of substantially all of the Debtor's assets to Global Widget, or the rights of any party under any of those orders and agreements.  To be clear, all orders entered by the Bankruptcy Court in this Chapter 11 Case shall be binding upon all parties receiving notice of this Plan or who otherwise received notice, actual or constructive, of the Chapter 11 Case.

Dated: April 23, 2024

**Green Roads, Inc., Debtor and Debtor in Possession**


By: _/s/ Julie Pilch_____,
       Julie Pilch
       Interim Chief Executive Officer

## EXHIBIT A

## PLAN DEFINITIONS

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees for legal, financial advisory, accounting and other professional services and reimbursement of expenses of such Professionals that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, or otherwise rendered prior to the Effective Date, in connection with (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order by all Professionals in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (c) applications for allowance of Administrative Claims arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code.  To the extent the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses or any such Professional voluntarily waives or reduces its fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.      "*Administrative Claims*" means Claims for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses incurred on and after the Petition Date and before the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises).  Notwithstanding the foregoing, (i) any fees or charges assessed against the Estate of the Debtor under section 1930 of Chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claims and shall be paid in accordance with the Plan, and (ii) Accrued Professional Compensation is excluded from the definition of Administrative Claims and shall be paid in accordance with the Plan.

3.      "*Administrative Claims Bar Date*" means the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated herein.

4.      "*Alleged Secured Claim*" means any Claim which attempts to assert a security interest in any property of the Debtor's Estate.

5.      "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided by a Final Order of the Bankruptcy Court:  (a) a Claim or Equity Interest that has been scheduled by the Debtor in its schedules of liabilities that has been Filed by the Claims Objection Bar Date; (b) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (c) a Claim or Equity Interest that has been reviewed and deemed allowed by the Responsible Person; (d) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court by a Final Order or (ii) in any stipulation with the Debtor or amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; (e) a Claim or Equity Interest that is deemed allowed pursuant to the terms hereof or Allowed in the

Confirmation Order; or (f) a Disputed Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

6.      "*Assets*" means all assets of the Debtor as of the Effective Date, including, but not limited to, all rights for payments or proceeds owed by Global Widget under the terms of the Sale Order, Cash of the Estate, Causes of Action, Books and Records and Privileges, as well as the Wind-Down Amount; for the avoidance of doubt, the Assets include any of the Debtor's rights to tax refunds and any rights related to the Debtor's employee retention tax credits.

7.      "*Ballot*" means the form of ballot, approved by the Disclosure Statement Order, used to record votes in favor of or opposed to the Plan.

8.      "*Bankruptcy Code*" means section 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as in effect as of the Petition Date.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida.

10.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 23 of the United States Code, the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

11.      "*Bar Date Notice*" means the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 20].

12.      "*Books and Records*" means all books and records of the Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

13.      "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.      "*Carve-Out*" means the cash set aside under the terms of the Final Financing Order that is not subject to liens or priority Claims and is designated to pay the Professionals Fees and the U.S. Trustee Fees.

15.      "*Cash*" means cash and cash equivalents, including, but not limited to bank deposits, liquid investments, checks and similar items.

16.      "*Causes of Action*" means claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, defenses, rights of setoff, recoupment, subrogation, contribution, reimbursement or indemnity, counterclaims and crossclaims against any other Person, based in law and/or equity, whether under the Bankruptcy Code or other applicable law, whether direct, indirect, derivative or otherwise, whether known, suspected or unsuspected and whether asserted or unasserted as of the Effective

Date.  For the avoidance of any doubt, "Causes of Action" includes, without limitation all claims arising under or authorized by 11 U.S.C. §§ 509, 510, 542 through 546, and 548 through 553, including applicable state law claims, or other actions against insiders and/or any other entities under the Bankruptcy Code. The Schedules set forth a list of transfers of property made by the Debtor before the Petition Date, and the recipients of such transfers should be aware that they may be liable for an avoidance, recover, fraudulent transfer, etc. as defined under the Bankruptcy Code. However, the mere fact that a party is not listed in the Schedules, the Plan or the Disclosure Statement does not mean that the Debtor does not hold a Cause of Action against that party.  The term Causes of Action shall not include those Causes of Action previously sold, released, or waived under the terms of the Sale Order, any other order of the Bankruptcy Court, and any releases executed by the Debtor between the Petition Date and the Effective Date.

17.      "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date, which is proceeding as case no. 23-11738-SMG.

18.      "*Claim*" means a "claim," as that term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

19.      "*Claims Objection Bar Date*" means the deadline for objecting to Claims, which shall be the 90th day following the Effective Date; provided, however, that the Debtor or the Responsible Person upon notice and motion may seek extensions of this date from the Bankruptcy Court.

20.      "*Class*" means a category of Claims or Equity Interests as set forth herein pursuant to section 1122(a) of the Bankruptcy Code.

21.      "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

22.      "*Confirmation Hearing*" means the hearing before the Bankruptcy Court during which the Debtor will seek confirmation of the Plan.

23.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24.      "*Creditor*" means a "creditor" as that term is defined in section 101(10) of the Bankruptcy Code.

25.      "*Debtor*" or "*Debtor in Possession*" means Green Roads, Inc.

26.      "*Disbursing Agent*" means the Responsible Person or his designee as more particularly described in Article V.

27.      "*Disclosure Statement*" means the Disclosure Statement for the Plan, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, as it is amended, supplemented or modified from time to time.

28.      "*Disclosure Statement Order*" means any order of the Bankruptcy Court approving the Disclosure Statement as having adequate information, including any such order that approves the Disclosure Statement on a conditional or non-final basis.

29.      "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim in a liquidated amount has been timely filed; (b) as to which the Debtor, the Responsible Person or other party has interposed a timely objection or request for estimation in accordance with this Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of this Plan, the Responsible Person shall have the power, up to and including the Claims Objection Bar Date, to determine a Claim to be Disputed upon review of the claims register and the Books and Records and may cause the amendment of the Schedules to reflect any such determination.

30.      "*Disputed Claims Reserve*" means amounts in a bank account or accounts reserved for Disputed Claims in accordance with the terms of Article VI.B of this Plan.

31.      "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

32.      "*Distributable Cash*" means the amount of Cash held by the Liquidating Trust after reasonable reserves the Responsible Person deems appropriate and after the payment of Administrative Claims, Priority Tax Claims, Other Priority Claims, and the necessary expenses of the Liquidating Trust so that such remaining Cash is available for Distributions to the holders of Allowed General Unsecured Claims in Class 1-A and Founders' Claims in Class 1-B.

33.      "*Effective Date*" means the date that is the Business Day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect; and (b) all relevant conditions in Article VIII of the Plan have been satisfied or waived.

34.      "*Entity*" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

35.      "*Equity Interest*" means any "equity security" as that term is defined in section 101(16) of the Bankruptcy Code in the Debtor that existed immediately prior to the Petition Date.

36.      "*Estate*" means the estate of the Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

37.      "*Exculpated Parties*" means, collectively, (i) the Debtor's Professionals (including Dentons Bingham Greenebaum LLP, Dentons US LLP, ATB Capital Markets, Inc., KapilaMukamal LLP) (ii) Julie Pilch and Nikki Wisner, employees of the Debtor who remained employed by the Debtor after the Petition Date; and (iii) the Responsible Person.

38.      "*File*" or "*Filed*" means, with respect to any motion, pleading or other document, entered on the docket of the Chapter 11 Case.

39.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

40.     "*Final Financing Order*" means the *Final Order Granting Emergency Motion of the Debtor for Entry of an Order on an Interim and Then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief* [Docket No. 64] entered by the Bankruptcy Court on April 4, 2023.

41.     "*Final Order*" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing (excluding the times prescribed by Bankruptcy Rules 9023 and 9024), or request for a stay has expired.

42.     "*Founders' Claims*" means Claims against the Debtor that are not Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, or Equity Interests and which are held by the holders of equity interests in the Debtor or its predecessors who sold the business to SNDL pursuant to the *Plan of Merger and Securities Purchase Agreement By and Among Green Roads Founders LLC, the Members of Green Roads Founds LLC, Green Roads Holdings LLC, the Members of Green Roads Holdings LLC, Clarity Labs LLC, the Members of Clarity Labs, LLC, the Valens Company Inc., and VGR Merger Sub, Inc. Dated April 26, 2021*. For the avoidance of doubt, these claims include but are not limited to those claims asserted in the litigation pending as *Dale Baker et al. v. The Valens Company, Inc. et al.*, pending before the Superior Court of the State of Delaware.

43.     "*General Unsecured Claims*" means Claims against the Debtor that are not Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims,or Equity Interests.  Founders' Claims are included as General Unsecured Claims in Class 1-B, whereas all other General Unsecured Claims are included in Class 1-A.

44.     "*Global Widget*" means Global Widget, LLC and any of its agents, affiliates or subsidiaries.

45.     "*Governmental Unit*" means a "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code.

46.     "*Impaired*" means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to any Class of Claims or Equity Interests.

47.     "*Initial Distribution Date*" means the date that is as soon as practicable after the Administrative Claims Bar Date, when Distributions under this Plan shall commence to holders of Allowed Claims.

48.     "*Interim Financing Order*" means the *Interim Order Granting Emergency Motion of the Debtor for Entry of an Order on an Interim and Then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief* [Docket No. 42] entered by the Bankruptcy Court on March 16, 2023.

49.     "*Lien*" means a "lien" as that term is defined in section 101(37) of the Bankruptcy Code, including, without limitation, a deed of trust, mortgage, charge, security interest, pledge, royalty, override, wheelage obligation, or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

50.     "*Liquidating Trust*" means the liquidating trust created pursuant to the Plan.

51.     "*Liquidating Trust Agreement*" means the liquidating trust agreement entered into pursuant to the terms of the Plan and attached hereto as **Exhibit B**, as amended from time to time.

52.     "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

53.     "*Person*" means a "person" as that term is defined in section 101(41) of the Bankruptcy Code, including, without limitation, any individual or Entity.

54.     "*Petition Date*" means March 6, 2023, the date on which the Debtor commenced the Chapter 11 Case.

55.     "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court, as the case may be.

56.     "*Plan Objection Deadline*" means the deadline for parties in interest in the Chapter 11 Case to object to the Plan as established by order of the Court.

57.     "*Plan Supplement*" means the supplement to the Plan containing certain documents and forms of documents specified in the Plan, if any, which documents and forms shall be filed prior to the hearing on confirmation of the Plan.

58.     "*Priority Tax Claims*" means Claims of Governmental Units accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

59.     "*Privileges*" means the right to assert or waive any privilege, including, but not limited to, any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written, electronic or oral), and control over or rights to direct current or former agents, attorneys, advisors and other professionals of the Debtor with respect thereto.  Such Privileges shall vest in the Responsible Person on the Effective Date.

60.     "*Professional*" means any Person employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

61.     "*Proof of Claim*" means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

62.    "*Pro Rata*" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class. Such ratios shall be calculated as if all Claims in the particular Class asserted against the Debtor are Allowed Claims as of the Effective Date, unless specifically provided otherwise in the Plan.

63.    "*Record Date*" means the date that is seven days before the Confirmation Hearing.

64.    "*Representatives*" means, with regard to a Person (including the Debtor), any current or former officers, directors, employees, advisors, attorneys, professionals (including Professionals), accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

65.    "*Responsible Person*" means Soneet R. Kapila in his capacity as fiduciary responsible for administering the Estate in accordance with the Plan, and any successor.

66.    "*Sale*" means the sale, approved by the Bankruptcy Court pursuant to the Sale Order, of substantially all of the Debtor's assets.

67.    "*Sale Order*" means the *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* [Docket No. 93] entered by the Bankruptcy Court on May 18, 2023, as may be amended by further Bankruptcy Court order.

68.    "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs pursuant to section 521 of the Bankruptcy Code Filed by the Debtor on March 27, 2023, and as may be amended or modified from time to time.

69.    "*Solicitation Procedures*" means the solicitation procedures set forth in Article XII of the Disclosure Statement.

70.    "*SNDL*" means SNDL, Inc., a Canadian corporation and any of its agents, affiliates or subsidiaries, including The Valens Company Inc., a Canadian corporation.

71.    "*Subsequent Bar Date*" means the deadline for any parties who have been added to the Subsequent Notice List to file with a request with the Bankruptcy Court for payment of such Claim.

72.    "*Subsequent Distribution Date*" means any date that a Distribution not made on the Initial Distribution Date is made.

73.    "*Subsequent Notice List*" means the list of interested parties who may not have received notice of this chapter 11 proceeding, but who are now receiving such notice.  A list of parties comprising the Subsequent Notice List is set forth in **Exhibit C**.

74.     "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in Region 21, including the Southern District of Florida.

75.     "*Voting Deadline*" means the deadline to vote to accept or reject the Plan.

76.     "*Voting Record Date*" the date on which holders of Claims that are entitled to vote to accept or reject the Plan will be determined.

77.     "*Wind-Down Amount*" means cash transferred into the Liquidating Trust by the Debtor following the Debtor's reservation for, or payment of, all administrative and priority claims incurred prior to the Effective Date.

# EXHIBIT B

## LIQUIDATING TRUST AGREEMENT

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement ("Agreement") is made and entered into this __ day of _____, 2024, effective as of the Effective Date (defined below), by and between (i) Green Roads, Inc. (the "Debtor") as debtor in possession in the chapter 11 case under the caption *In re Green Roads, Inc.*, Case No. 23-11738-SMG (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") and (ii) Soneet R. Kapila, as responsible person (the "Responsible Person") for the benefit of the creditors and as set forth in the *Chapter 11 Plan of Liquidation Proposed by Green Roads, Inc.*, as may be amended, modified or supplemented (the "Plan") and confirmed by the Bankruptcy Court by Order (the "Confirmation Order").

### RECITALS:

**WHEREAS,** on March 6, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court, thereby commencing the Bankruptcy Case.

**WHEREAS,** on April 23, 2024 the Debtor filed the Plan.

**WHEREAS**, the Bankruptcy Court entered the Confirmation Order on December 13, 2023 and the Plan became effective on December 19, 2023 (the "Effective Date").

**WHEREAS**, the Plan contemplates that the Debtor shall, on behalf of the beneficiaries, create a liquidating trust to fulfill and accomplish the provisions of the Plan into which specified assets and liabilities of the Debtor shall be transferred, assigned and conveyed for the benefit of the holders of Allowed Claims, all as more specifically therein set out in the Plan (the "Liquidating Trust"). The Responsible Person is designated in the Plan as the entity which is to serve as the trustee of the Liquidating Trust.

### AGREEMENTS:

**NOW, THEREFORE,** pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is hereby agreed as follows:

## 1. DEFINITIONS.

*1.1 Terms Defined Above*. As used in this Agreement, each of the terms "Agreement," "Bankruptcy Case," "Bankruptcy Court," "Debtor," "Liquidating Trust," "Plan," "Confirmation Order," and "Responsible Person," shall have the meanings hereinabove set out.

*1.2 Additional Defined Terms*. As used herein, the following terms shall have the meanings set out below, unless the context otherwise requires:

(a) **"Beneficiaries"** shall mean the claimants in the Bankruptcy Case who are, or may in the future be, entitled to receive their Pro Rata share of the proceeds of the Liquidating Trust Assets from the Liquidating Trust pursuant to Article III of the Plan.

*(b)* ***"Trust Estate"*** shall mean all of the property held from time to time by the Responsible Person pursuant to this Agreement, including all assets and all liabilities.

*1.3* ***Terms Defined in Plan.***  All other terms used but not defined herein shall have the meaning set out in the Plan.

## 2. AUTHORITY OF AND CERTAIN DIRECTIONS TO RESPONSIBLE PERSON; DECLARATION OF TRUST.

*2.1* ***Creation of the Liquidating Trust***.  The Debtor hereby creates the Liquidating Trust for the sole purpose of holding and administering the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701.4(d) and taking actions as necessary to made distributions to the Beneficiaries.

*2.2* ***Purpose of the Liquidating Trust***.  This Liquidating Trust is organized for the sole purpose of conserving, managing and liquidating the Trust Estate for the benefit of the Beneficiaries, with no objective to engage in the conduct of a trade or business.  Pursuant to this express purpose, the Responsible Person is hereby authorized and directed to take all reasonable and necessary actions to conserve and protect the Trust Estate, pursue Causes of Action assigned to the Liquidating Trust, and to sell or otherwise dispose of the Trust Estate and to distribute the net proceeds of such disposition as set forth in the Plan.

*2.3* ***Property of the Liquidating Trust***.  Legal title to the Trust Estate shall be held either in the name of the Liquidating Trust, or in the name of the Responsible Person on behalf of the Liquidating Trust, as the Responsible Person may from time to time determine.  The Responsible Person shall hold such property in trust to be administered and disposed of by it pursuant to the terms of this Agreement for the benefit of the Beneficiaries.

*2.4* ***Treatment of the Liquidating Trust for Federal Income Tax Purposes: No Successor in Interest***.  The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Agreement intend that the Responsible Person take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company.  For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Responsible Person, and the Beneficiaries) shall treat each transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer by the Debtor of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the beneficiaries in satisfaction of the Beneficiaries' claims against the Debtor, followed by (2) the transfer by such Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for such Beneficiaries' interest in the Liquidating Trust Assets. Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets.

2

The foregoing shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes.

**2.5  Bonding of the Responsible Person**.  The Responsible Person shall not be obligated to obtain a bond.

**2.6  Fiduciary Duties of the Responsible Person**.  Pursuant to the Plan and the Liquidating Trust Agreement, the Responsible Person shall act in a fiduciary capacity on behalf of the interests of the Beneficiaries of the Liquidating Trust, the holders of Class 1-A General Unsecured Claims and the Class 1-B Founders' Claims, as applicable.

**3.  DELIVERY AND ACCEPTANCE OF TRUST ESTATE**.

**3.1  Transfer of the Liquidating Trust Assets**.   On the Effective Date, the Debtor shall transfer all the Assets of the Estate to the Liquidating Trust as provided for in the Plan and in the Confirmation Order.

**3.2  Acceptance by Responsible Person**.  The Responsible Person hereby accepts the trust imposed upon it by this Agreement and agrees to observe and perform the obligations subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.  In connection with and in furtherance of the purpose of the Liquidating Trust, the Responsible Person hereby accepts the transfer of the Liquidating Trust Assets.

**4.  ADMINISTRATION OF TRUST ESTATE**.

**4.1  Payment of Allowed Claims**.  The Responsible Person shall make Distributions of Liquidating Trust Assets in accordance with the Plan.  Other than as set forth herein or in Article III of the Plan, holders of Class 1-A General Unsecured Claims and the Class 1-B Founders' Claims shall receive a Pro Rata share of each of the Initial Distribution and any Subsequent Distributions made by the Responsible Person from the Liquidating Trust Assets.

**4.2  Powers of the Responsible Person**.  Subject to the provisions herein in administering the Liquidating Trust, the Responsible Person shall have the following powers to be exercised in his discretion in the administration of the Liquidating Trust:

> **(a)**  to review, receive, own, hold and collect the Debtor's obligations as defined under the Plan and to confirm the Debtor's compliance thereof, including, but not limited to, filing post-confirmation quarterly reports, complying with orders of the Bankruptcy Court, etc.;

> **(b)**  to pursue, litigate, compromise and settle the Debtor's retained Causes of Action as set fort in the Plan;

> **(c)**  to pursue and manage the liquidation of the Liquidating Trust Assets for the benefit of the Beneficiaries, including making Distributions in accordance with the Plan;

> **(d)**  to review, and if necessary, objecting to Claims asserted against the Debtor in the Bankruptcy Case and to settle objections with respect to such Claims;

    *(e)* to open bank accounts on behalf of and in the name of the Liquidating Trust;

    *(f)* to pay expenses and obligations of the Liquidating Trust;

    *(g)* to pay all taxes (without objections), to make all tax withholdings and to file tax returns and information as either the Debtor or a grantor trust as the Responsible Person determines pursuant to Treasury Regulation Section 1.671-4(a) in accordance with the Plan and make tax elections by and on behalf of the Liquidating Trust;

    *(h)* to retain or discharge, without the need to seek Bankruptcy Court approval, such legal counsel, public accountants and other professional advisors as the Responsible Person may deem advisable, in his sole discretion, in connection with the administration of the Liquidating Trust or the exercise of his other powers set out herein;

    *(i)* to establish, re-evaluate, adjust and maintain appropriate reserves as required under the Plan or otherwise to pay any liabilities of the Liquidating Trust;

    *(j)* to pay all fees, expenses, debts and liabilities of the Liquidating Trust and to pay all Allowed Claims in the Bankruptcy Case in accordance with the Plan; and

    *(k)* to exercise such other powers and duties as necessary or appropriate in the discretion of the Responsible Person to accomplish the purposes of the Liquidating Trust as set out herein.

   **4.3 *Additional Powers of the Responsible Person***.  Subject to the express limitations contained herein, the Responsible Person shall have, and may exercise with respect to the Trust Estate, or any part thereof, and in the administration and distribution of the Trust Estate, all powers now or hereafter conferred on trustees by Florida common and statutory law.  The powers conferred by this Section in no way limit any power conferred on the Responsible Person by any other Section hereof but shall be in addition thereto; provided, always, that the powers conferred by this Section are conferred and may be exercised only and solely within the limitations and for the limited purposes imposed and expressed in Section 2 hereof.

   **4.4 *Payment of Certain Fees and Expenses***.  All costs and expenses and obligations incurred by the Liquidating Trust in administering the liquidation of the Trust Estate and liquidation of all Claims and otherwise carrying out the duties under the Liquidating Trust and the Plan or in any manner connected, incidental or related thereto, specifically including the fees of the Responsible Person, and the Liquidating Trust's lawyers and other professionals, is a charge against the Liquidating Trust.  Subject to Section 4.6(d), the Responsible Person shall have the duty and sole responsibility for reviewing and approving any expenses and costs.  Further:

    *(a) Compensation of the Responsible Person.*  The Responsible Person shall be paid $820 per hour from the Trust Estate for administration of the Liquidating Trust.  The Responsible Person shall not be required to seek Bankruptcy Court approval for his fees and expenses.

**(b)   Expenses of the Responsible Person.**   The Trust Estate shall also reimburse the Responsible Person upon request for all reasonable out-of-pocket expenses incurred by him in the performance of his duties hereunder, including, if necessary, relevant filing fees.

**(c)   Professionals.**   Any professionals retained or utilized by the Responsible Person (the "Trust Professionals") shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.

**4.5   Transferee Liabilities**.   The Liquidating Trust shall have no liability for, and the Trust Estate shall not be subject to, any claim arising by, through or under the Debtor except as set forth in the Plan or herein.  In no event shall the Responsible Person have any personal liability for such claims.  If any liability shall be asserted against the Liquidating Trust or the Responsible Person as the transferees of the Trust Estate on account of any claimed liability of, through or under the Debtor, the Responsible Person may use such part of the Trust Estate as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Responsible Person.  In no event shall the Responsible Person be required to use his funds or assets for such purposes.

**4.6   Conveyances from Liquidating Trust**.   Subject to the express limitations contained herein, in administering the Liquidating Trust, the Responsible Person is authorized and directed to do and perform all such acts and to execute and deliver such deeds, bills of sale, assignments, instruments of conveyance and other documents as he may deem necessary or advisable to carry out the purposes of the Liquidating Trust.  All conveyances, assignments and transfers by the Liquidating Trust shall be on a "where-is, as-is" basis and without warranty of title, warranty of merchantability, warranty of fitness for a particular purpose, or any other warranty of any kind, express, implied or statutory.

**4.7   Fiscal Year**.   The Liquidating Trust's fiscal year shall end as of December 31 of each year unless the Responsible Person deems it advisable to establish some other date on which the fiscal year of the Liquidating Trust shall end.

**4.8   Reports by Responsible Person**.   The Responsible Person shall prepare and file with the Bankruptcy Court, within 45 days after the end of the fiscal year, a report for such year, commencing with the first complete calendar year following the date of this Agreement, showing (i) the amount of payments made on account of Allowed Claims during such calendar year, (ii) income received or expense, disbursement or reserve made or established during such calendar year; (iii) a statement of the value of all cash and cash-equivalent assets in the Trust Estate as of the end of such calendar year, and (iv) all litigation commenced by the Responsible Person on behalf of the Liquidating Trust.   The Responsible Person shall prepare and file any other information regarding the Liquidating Trust that may be requested by the Bankruptcy Court.

**5. SOURCE OF PAYMENTS**.

**5.1   Payments from Trust Estate**.   All payments to be made by the Responsible Person to any Beneficiary shall be made only from the assets, income and proceeds of the Trust Estate and only to the extent that the Responsible Person shall have received sufficient assets, income or

proceeds of the Trust Estate to make such payments in accordance with the terms of this Section 5. Each Beneficiary shall look solely to the assets, income and proceeds of the Trust Estate for distribution to such Beneficiary as herein provided. The aggregate amounts required to be distributed to Beneficiaries in accordance with the provisions of the Plan shall be determined by the Responsible Person in his discretion in accordance with the provisions of the Plan and his determination shall be final and conclusive on all persons and, in the absence of gross negligence or willful misconduct on the part of the Responsible Person, shall not require the review of the Bankruptcy Court. In determining the amount of any such distribution, the Responsible Person may rely and shall be fully protected in relying upon the advice and opinion of legal counsel and other professionals of the Responsible Person.

*5.2  Withholding of Taxes and Other Charge*. The Responsible Person may withhold from the amount distributable at any time to any Beneficiary such sum or sums as may be sufficient to pay any tax or taxes or other charge or charges which have been or may be imposed on any Beneficiary under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for herein, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement. The Responsible Person, in the exercise of his discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this Section 5.2. As a condition to receiving any Distribution, all Beneficiaries are required to provide any information necessary to effect information reporting and the withholding of such taxes on Form W-8 or W-9 ("Tax Information") within 30 days of a request by the Responsible Person and prior to receiving a Distribution. Failure to comply will result in the Beneficiary's Distribution being treated as undeliverable or unclaimed and forfeited. If the requisite forms are not returned by the date of the Final Distribution, the Beneficiary's claim shall be forever barred. The Liquidating Trust shall not be liable for, and the Responsible Person or his disbursing agent shall not be required to make, a Distribution prior to receiving the Tax Information.

## 6.  OTHER DUTIES OF THE RESPONSIBLE PERSON.

*6.1  Management of Trust Estate*. With respect to assets of the Trust Estate, from time to time, the Responsible Person shall, and is hereby directed, to take such actions as shall be necessary or advisable to preserve, maintain and protect the Trust Estate for the benefit of the Beneficiaries consistent with the purposes of the Trust.

*6.2  No Implied Duties*. The Responsible Person shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Estate or otherwise take any action hereunder, except as expressly provided herein, and no implied duties or obligations shall be read into this Agreement in favor of or against the Responsible Person; provided, however, that this provision shall not limit the powers conferred on trustees by Florida common and statutory law, except to the extent any such power may conflict with any of the provisions and purposes of this Agreement.

## 7.  CONCERNING THE RESPONSIBLE PERSON.

*7.1  Acceptance by Responsible Person*. The Responsible Person accepts the Liquidating Trust hereby created for the benefit of the Beneficiaries and agrees to perform the same upon the terms and conditions herein set out. Notwithstanding any term or provision hereof to the contrary,

the Responsible Person shall have and exercise the rights and powers herein granted and shall be charged with the performance of the duties herein declared on the part of the Responsible Person to be had and exercised or to be performed. The Responsible Person also agrees to receive and disburse all monies actually received by him constituting part of the Trust Estate pursuant to the terms of this Agreement. Neither the Responsible Person nor his agents, servants, attorneys, partners and employees shall be personally liable for any action taken or omitted to be taken by or on behalf of the Responsible Person unless such action or omission constitutes gross negligence or willful misconduct.

**7.2 Discretionary Submission of Questions to the Bankruptcy Court**. The Responsible Person, in his discretion and judgment, may submit to the Bankruptcy Court any question or questions which the Responsible Person may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Responsible Person with respect to the Trust Estate, or any part thereof, or the administration and distribution of the Trust Estate. The Bankruptcy Court shall approve or disapprove any such proposed action after motion and hearing. Any such proposed action submitted to the Bankruptcy Court for approval will be approved by the Bankruptcy Court if no Beneficiary objects to such motion within the time specified by the applicable Bankruptcy Rule. If a Beneficiary objects to such action by the Responsible Person, the Bankruptcy Court shall approve or disapprove such action after hearing. Upon approval of a proposed action by the Bankruptcy Court by Final Order, the Responsible Person shall be authorized to take the proposed action without liability with respect thereto. If such action is not approved by the Bankruptcy Court, the Responsible Person shall not take such action. All costs and expenses incurred by the Responsible Person in the exercise of any right, power or authority conferred by this Section shall be costs and expenses of the Trust Estate.

**7.3 Liability of the Responsible Person.**

**(a) Limitation on Liability**. No provision of this Agreement shall be construed to impart any liability upon the Responsible Person, or any of his attorneys, accountants, professionals, partners and employees unless he shall be proved that such person's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right, power or duty vested in the Responsible Person under this Agreement.

**(b) Reliance on Orders, Statements, Certificates or Opinions**. In the absence of gross negligence or willful misconduct on the part of the Responsible Person, the Responsible Person may conclusively rely, as to the truth of the statements and correctness of the opinions expressed therein, upon any orders, statements, certificates or opinions furnished to the Responsible Person and conforming to the requirements of this Agreement.

**(c) Discretion of Responsible Person**. Within the limitations and restrictions expressed and imposed herein, the Responsible Person may act freely with respect to the exercise of any or all of the rights, powers and authority conferred hereby in all matters concerning the Trust Estate after forming his best judgment based upon the circumstances without the necessity of obtaining the consent or permission or authorization of the Beneficiaries or of the Bankruptcy Court, any other court, official or officer. The rights, powers and authority conferred on the Responsible Person by this Agreement are conferred in contemplation of such freedom of prudent judgment and action by the Responsible Person, within the limitations and restrictions so expressed and imposed.

7

Further, neither the Responsible Person nor his agents, servants, partners and attorneys shall be liable for any act or omission in connection with the administration of this Liquidating Trust, or the exercise of any right, power or authority conferred upon him hereunder, unless he shall be proved that such Responsible Person was grossly negligent or acted in a manner which constituted willful misconduct.

*(d)  Delegation of Duties*.  The Responsible Person shall have power over and be solely responsible for the management and administration of the Liquidating Trust. Notwithstanding the foregoing, the Responsible Person may engage the services of and delegate such of his powers and duties (but not any of his responsibilities), upon such terms and conditions as are satisfactory to the Responsible Person, to such employees, agents, attorneys, accountants, appraisers, consultants and other persons, including, without limitation, where appropriate, any of the Beneficiaries and their respective agents and employees, as he may deem necessary or advisable to carry out the purposes of the Liquidating Trust.

*(e)  Reliance on Professionals*. The Responsible Person may consult with legal counsel and with such public accountants and other professionals as may be retained by the Responsible Person pursuant to the provisions defined herein.  The Responsible Person shall not be liable for any action taken or suffered by him or omitted to be taken by him without gross negligence or willful misconduct in reliance on any opinion or certification of such accountants or in accordance with the advice of such counsel or experts.

*7.4  Reliance on Responsible Person*.  No person dealing with the Responsible Person shall be obligated to see to the application of any monies, securities or other property paid or delivered to it, or to inquire into the expediency or propriety of any transaction or the right, power or authority of the Responsible Person to enter into or consummate the same upon such terms as the Responsible Person may deem advisable.  Persons dealing with the Responsible Person shall look only to the Trust Estate to satisfy any liability incurred by the Responsible Person to such persons and, except as otherwise expressly provided herein, the Responsible Person shall have no personal obligation to satisfy any such liability.

*7.5  Parties Acting on Behalf of the Liquidating Trust*.

*(a)  Indemnification*.  The Liquidating Trust shall indemnify any person who becomes a party, or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that it, he or she is or was a Responsible Person or professional retained by the Liquidating Trust against expenses (including attorneys' fees), judgments, tax obligations, liabilities or penalties, fines and amounts paid in settlement actually and reasonably incurred by it in connection with such action, suit or proceeding, including appeals thereof, if he acted without gross negligence or willful misconduct, in the exercise and performance of any power or duty of a Responsible Person or professional as the case may be, under this Agreement.  Any indemnification hereunder is limited by the assets of the Liquidating Trust.

*7.6  Resignation and Removal*.

(a) *Resignation*. The Responsible Person may resign and be discharged from any future obligations hereunder by giving written notice thereof at least 30 days prior to the Bankruptcy Court. Such resignation shall become effective on the earlier of (i) 30 days after the giving of such notice, or (ii) after appointment of a permanent or interim successor trustee.

(b) *Appointment of a Successor Responsible Person*. If, at any time, the Responsible Person shall give notice of his intent to resign pursuant to Section 7.6(a) hereof, before such resignation the Responsible Person shall appoint a successor Responsible Person to act under this Agreement.

(c) *Tax Reports, Winding Up*. Notwithstanding his resignation or removal, the Responsible Person shall be entitled to complete and file any and all tax returns and reports and pay any and all taxes for periods during which the Responsible Person served on behalf of the Trust. The Liquidating Trust shall pay the taxes and the Responsible Person's expenses incurred with respect to the foregoing.

*7.7 Acceptance of Appointment by Successor Responsible Person*. Any successor Responsible Person appointed hereunder shall execute an instrument accepting such appointment and shall deliver a counterpart thereof to the Bankruptcy Court. Thereupon, such successor Responsible Person shall, without any further act, become vested with all the rights, titles, interests, estates, properties, rights, powers, trusts and duties of his predecessor in the Liquidating Trust hereunder with like effect as if originally named herein.

**8. TERM AND TERMINATION OF LIQUIDATION TRUST.**

*8.1 Term*. The Liquidating Trust shall continue and remain in effect for a term terminating on the earlier to occur of (a) all of the Liquidation Trust Assets have been distributed pursuant to this Plan and the Liquidation Trust Agreement, (b) the Responsible Person determines, in his sole discretion, that the administration of the Distribution of any remaining Liquidating Trust Assets is not cost-effective, (c) the Responsible Person is unable to make any remaining Distributions due to undeliverability of Distributions, or (d) all Distributions required to be made by the Responsible Person under this Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the term of the Liquidating Trust extend beyond six years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the sixth anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

*8.2 Winding Up*. For the purpose of winding up the affairs of the Liquidating Trust at its termination, the Responsible Person shall continue to act as the Responsible Person until his duties have been fully discharged. After so doing, the Responsible Person shall have no further duties or obligations hereunder. Upon motion by the Responsible Person, the Bankruptcy Court, if he determines it appropriate, may enter an order relieving the Responsible Person of any further duties hereunder.

**9. MISCELLANEOUS.**

    **9.1  Sales of Trust Estate**.  Any sale or other conveyance of the Trust Estate, or part thereof, by the Responsible Person made pursuant to the terms of this Agreement shall bind the Beneficiaries and shall be effective to transfer or convey all rights, titles and interests of the Responsible Person and the Beneficiaries in and to such Trust Estate or part thereof.

    **9.2  Notices**.  Unless otherwise expressly specified or permitted by the terms hereof, all notices, demands and other communications required or permitted to be given or made under this Agreement shall be in writing and shall be deemed delivered to the parties (a) on the date of personal delivery or transmission by electronic transmission, (b) on the first business day following the date of delivery to a nationally recognized overnight courier service, or (d) or the third business day following the date of deposit in the United States Mail, postage prepaid, by certified mail, in each case, addressed as follows, or to such other address, person or entity as any party may designate by notice to the others in accordance herewith:

To the Responsible Person &          To the Debtor:
Liquidating Trust:
                                     James R. Irving
Soneet R. Kapila                     Jacob S. Margolies
KAPILAMUKAMAL LLP                    DENTONS BINGHAM GREENEBAUM LLP
1000 South Federal Highway, Ste. 200 3500 PNC Tower, 101 S. Fifth Street
Fort Lauderdale, Florida 33316       Louisville, Kentucky 40202
Telephone: (954) 761-1011            Telephone: (502) 587-3606
E-mail:  skapila@kapilamukamal.com   E-mail:   james.irving@dentons.com
                                               jacob.margolies@dentons.com

    **9.3  Severability**.  Any provision of this Agreement which is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without affecting the validity or enforceability of any other provisions hereof.

    **9.4  Counterparts**.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. Signatures may be by electronic means as allowed by Florida law.

    **9.5  Binding Agreement**.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Responsible Person and his respective successors and assigns, as well as the Beneficiaries, and their respective successors and assigns.  Any request, notice, direction, consent, waiver or other instrument or action by any Beneficiary shall bind its successors and assigns.

    **9.6  Amendment**.  This Agreement may not be amended except by an instrument executed by the Responsible Person with the approval of the Bankruptcy Court following the Effective Date.

    **9.7  Construction**.  Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neuter, if appropriate; words importing the

23045550.v7

singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations and corporations.  The words herein, hereof, hereby, hereunder, and words of similar import, refer to this instrument as a whole and not to any particular Section or Subsection hereof.

**9.8  *Number and Gender***.  Unless the context otherwise requires, when used in this Agreement, the singular shall include the plural, the plural shall include the singular, and all nouns, pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, as the identity of the person or persons may require.

**9.9  *Governing Law***.  This Agreement shall be governed by, and shall be construed and enforced in accordance with, the laws of the State of Florida, without giving effect to any conflict of law rule or principle of such state.

**9.10  *Headings; Section References***.  Section headings or captions contained in this Agreement are inserted only as a matter of convenience and reference and in no way define, limit, extend or describe the scope of this Agreement, or the intent of any provision hereof.  All references herein to Sections shall refer to Sections of this Agreement unless the context clearly otherwise requires.

**9.11  *Preservation of Privileges***.  To the fullest extent permitted by law, the Debtor will be deemed to irrevocably transfer to the Liquidating Trust, as its legal successor, all rights of the Debtor and its bankruptcy estate (including the estate after the Effective Date) to exercise or waive any attorney-client privilege, accountant-client privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) (collectively, the "Privileges"), and the Debtor and the Liquidating Trust are authorized to take all necessary actions to effectuate the transfer of the Privileges.  All such Privileges also shall vest in the Liquidating Trust and the Responsible Person, to the fullest extent permitted by law.  This transfer is self-executing, provided however, that the Liquidating Trust and the Debtor are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges.  After the Effective Date, the Liquidating Trust shall have the exclusive power and authority to waive the Privileges.

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the date first written above.

*[Signature page follows]*

11

**GREEN ROADS, INC., IN ITS CAPACITY AS DEBTOR**

_____

By: Julie Pilch

Title:  Interim Chief Executive Officer

**SONEET R. KAPILA, IN HIS CAPACITY AS RESPONSIBLE PERSON**

_____

By:  Soneet R. Kapila

Title:  Responsible Person

**<u>EXHIBIT C</u>**

**SUBSEQUENT NOTICE**

ADP

Act Write Work – Senior High

AffsMedia LTD

Alfonso, Megan

Armella, Gianina

Avalara Tax Payments

Awwad, Anthonie

Baker Chelsea

Bastian Ryan

Bennett, William

Borjas Granados, Keny

Boudle Maria

Brown Britteny

Cabitt, Kelly

Carrigan, Todd

Carroll, Torrey

Corrigan Todd

Cotes, Alexander

CPAR Media, LLC

De La Rosa, Marianela

Diaz, Janet

Dominguez, Felix

Facebook

Fertig, Adamn

Fluent

Forbes Marketplace Holdings

Garcia, Norkys

Giraldo, Julian

Gozalex, Zulima

Haber, Jesika

Haimm, Matthew

Hernadez, Maria

Hernandez, Disnnisy

Honest Brand Reviews

Investments Limited

Isodor Canes

Jump Multy Services, LLC

Kasten, Jason

Katz, Juliana

Krop, Pamela

LaPointe, Kristie

Latortue, Natasha

Ledezma, Maggiolo

Lorenzo, Mariquita

Mark, Kenneth

Martin Caitlyn

Medrano-Elias, Roselyn

Michaels, Stephen

Morel, Jayne

Nguyen, Zuan Luan

Nikol Moen LLC

Nutra Offers

O'Hara, Myles

Pedroso, Bertha

Perez, Amy

Perez, Jennifer

Perez, Kelvis

Pilch, Julie

Pizzutelli, Laura

Quantlogic Media, LLC

Quinonez-Molano, Hans

Rahming, Lenord

Raybuck, Danielle

Ruth Nelly Pino

Shaff, Daniel

Sifontes, Taimi

Soto, Emily

Soueid, Hussein

Thompson, Taylor

Torres, Matthew

Velez, Victoria

Vera, Niza

VerifyPass, LLC

Villamizar, Carlos

Walker, Collin

Williams, Emmanuel